United States District Court
for the
Eastern District of Virginia

| | |
|---|---|
| Yaacov Apelbaum and XRVision ltd.<br>    *Plaintiffs* | )<br>)<br>) |
| v. | )    Civil Action No. 1:25cv147<br>) |
| Jordan Arthur Bloom<br>    *Defendant* | )<br>)<br>) |

### DEFENDANT'S MOTION TO SET ASIDE DEFAULT, MOTION TO DISMISS, AND COUNTER-CLAIM

## Motion to Set Aside Default

Defendant asks the Court to set aside the default entered on March 27 under Rule 60, because it was entered improperly, being inconsistent with Judge Porter's order on March 5 granting Defendant's motion to extend by 30 days. The only additional condition in that order was that Defendant Telmate LLC had until March 26 to respond. Telmate LLC is not a party to this suit, so as far as Defendant understands, he had until April 4.

Whether Plaintiff's anxiousness to enter a default has anything to do with Plaintiff's article last week, shared on social media by President Trump, suggesting federal judges may be guilty of "sedition and treason" is beyond the scope of this motion, but if Plaintiff could file his initial complaint the day before the statute of limitations for defamation in Virginia expired, a year from the publication of the article in Exhibit 1, surely Defendant has the same right to time.

## Motion to Dismiss

Defendant admits he published the articles contained in Exhibits 1 and 2 of the Complaint, but denies their sufficiency to sustain a cause of action.

Pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, as well as Local Civil Rule 7(A) requiring plaintiffs set forth with particularity the relief sought, Defendant hereby requests the Court dismiss all claims in the Complaint for failure to state a claim for relief, lack of jurisdiction, and the protected nature of Defendant's publishing, for the following reasons:

*There is no per se defamation here*

1. There are four types of *per se* defamation, two of which Plaintiff claims Defendant commits: statements which harm Plaintiff's business and falsely accusing him of committing a crime.

2. It is *per se* defamatory to falsely accuse someone of committing a crime, however Defendant does not do this. Defendant states nowhere in his article (Exhibit 1) that Plaintiff has violated any law. Plaintiff is incorrect as a matter of law about the scope of the Foreign Agents Registration Act (Line 33), which covers domestic lobbying and advocacy, and at any rate violations of the Foreign Agents Registration Act are only very rarely treated as criminal

matters. As a matter of DOJ policy, at the moment they are not. The laws which criminalize espionage and govern foreign agency concern acts, not qualities of persons anyway. There is no reasonable interpretation of Defendant's article that infers it states Plaintiff has committed a crime.

3. Plaintiff's claim about FARA in his Complaint, which he contends Defendant has alleged he has broken, is a *non sequitur* as a matter of law.

4. Alumni of Israeli military intelligence are integrated into some of the largest technology companies in America, including Google and Meta. Defendant has never written, for instance, that the founders of Onavo, a VPN company acquired by Meta which poses grave risks to Americans' data security, who are alumni of Israeli military intelligence, should register under FARA, because it isn't the right tool. But they are still Israeli spies, and for the Court to consider it tortious to identify them poses risks not just to the First Amendment, but to national security.

5. Plaintiff contends it goes without saying that calling him an Israeli spy harms his business because U.S. federal agencies do not want to work with companies involved in Israeli espionage against the United States (Line 28). It certainly does not go without saying, and is therefore not defamatory *per se*.

6. Little about the last 30 years would indicate identification as an Israeli spy is inherently damaging to one's reputation in business, and *per se* defamation is a category meant to encompass statements that are. It has certainly not harmed the many other spyware companies founded by alumni of Israeli military intelligence, some of which do business with the federal government, such as NSO Group, which had a secret contract with the FBI. The *Wall Street Journal* published a story on March 16 about the eagerness of American venture capital firms to invest in Israeli defense tech companies.

7. Federal agencies routinely contract with Israeli spyware companies with full knowledge of their origins, some of which spy on Americans, and a willingness to look the other way at this is, in both parties, something of a qualification for public office. Perhaps Plaintiff should be thanking Defendant and consider his article an advertisement.

8. It is surely not tenable for a standard to be set whereby Israeli tech firms founded by alumni of their intelligence services can only be covered in a positive light, but it is defamatory for a journalist covering them to have reservations about the integration of foreign technology from non-allied countries all across American tech development, including in the public sector.

9. Line 45 in Plaintiff's complaint alleges Defendant described Plaintiff as a dual citizen, when that is not written anywhere in the article in contention. Thus there are several claims in Plaintiff's complaint which impute to the article in question something that isn't there.

10. Plaintiff was asked whether it would be an acceptable correction to state that he is "an Israeli in the spyware business who by his own admission has done business with intelligence agencies" (Exhibit 2), facts which do not appear to be in dispute. In order for a *per se* defamation claim to succeed, the Court would have to find both that this is meaningfully different from calling him an Israeli spy, and also substantially false. It is neither.

*No demonstration of real damages*

11. If Defendant's article is not defamatory *per se*, then Plaintiff must demonstrate with specificity the harm caused, which he does not.

12. No amount in damages is stated in the Complaint.

13. Plaintiff contends (Line 35) that business partners and prospective business partners have lost trust in Plaintiff due to Defendant's article, leading to direct personal and business losses. Who? How much? The Court is not told.

14. Plaintiff's company is incorporated in Singapore, and he has identified no contracts with Virginians of any substantial value that may have been terminated due to Defendant's writing, which would be the basis of compensatory damages for tortious interference. Plaintiff has not demonstrated damage to his reputation in any locale in his Complaint due to Defendant's articles, let alone in Virginia. Even if he were to do so, it would be difficult to assign this reputational harm to Defendant rather than Plaintiff's preexisting involvement in the Hunter Biden matter.

15. Plaintiff alleges (Line 6) that he conducts business with the federal government. As far as Defendant can tell, Plaintiff XRVision has no federal contracts involving public revenues.

16. If there is no *per se* defamation and there is no demonstration of damages, Plaintiff's claim cannot be sustained.

*Plaintiff is a limited-purpose public figure, and the standards for defamation are not met*

17. If Plaintiff has been subpoenaed in connection with litigation surrounding the son of a president, then the higher standard for defamation regarding media coverage of public figures ought to apply here, if it applies anywhere.

18. Plaintiff is a limited-purpose public figure as pertains to coverage of his involvement in the Hunter Biden matter, which means the higher standard of actual malice applies here. This only enters into the question if it please the Court to find the statements at issue substantially false, which Defendant does not believe them to be.

19. In order to demonstrate malice, Plaintiff concocts a variety of conspiracy theories surrounding Defendant's alleged prejudice toward Jews, though he has a well-documented record of both working with and publishing Jewish writers, even on the right of the Israeli political spectrum, as well as a willingness to grant requests for corrections from Israeli diplomatic officials (Exhibit 2). Defendant would describe his record toward these matters as tough, but reasonable and always open-handed. We are in a difficult moment in U.S.-Israel relations, and Defendant would argue such a perspective is precisely what is called for in his work.

20. It was the Plaintiff that was unwilling to consider Defendant's openness to negotiating over corrections (Exhibit 2), and this openness indicates a lack of malice on Defendant's part. Plaintiff is relying on imputations of bigotry to carry the weight in a complaint where the substance is simply not there, and direct engagement with the Defendant would suggest the opposite of what is being claimed. This is indicative of bad faith.

*Defendant's article is protected speech under Virginia law and the First Amendment*

21. What is called Virginia's anti-SLAPP statute (Code of Virginia: § 8.01-223.2), differing from other state anti-SLAPP laws in that it does not provide a specific mechanism to quickly dismiss a frivolous claim, provides immunity to tort liability "regarding matters of public

concern that would be protected under the First Amendment to the Constitution of the United States made by that person that are communicated to a third party," and provides for recovery of costs in the event of dismissal.

22. Surely articles about the intrigues surrounding the son of a president are protected matters of public concern. If they are not, it would be hard to imagine any that would be. Moreover, it is objectively in the public interest for it to be known that there were complexities in the Hunter Biden matter which escaped mention around the time of the 2020 election.

23. Federal Courts of Appeals are split as to whether state anti-SLAPP laws can be applied in federal courts, and the Fourth Circuit has not weighed in on this.

24. The Courts of Appeals which have taken a negative view toward the incorporation of state anti-SLAPP laws in federal courts (Circuits 2, 5, 10 and 11) have taken issue with a special motion to dismiss, suggesting it conflicts with federal procedural rules governing discovery.

25. In this action, in which the Plaintiff claims the article in question (Exhibit 1) is *per se* defamatory (line 52), there is no discovery that would change the fundamental question the Court is being asked to rule upon, therefore there is no conflict between the Federal Rules of Civil Procedure and Virginia's anti-SLAPP statute here.

*Grounds for dismissal with prejudice*

26. While any dismissal is considered an adjudication on the merits according to Rule 41b, and therefore cannot be refiled, due to Plaintiff bringing an insufficient Complaint in bad faith, with numerous errors of fact about the article in question which the Court can plainly see, Defendant requests the Court grant a dismissal with prejudice.

27. Plaintiff Apelbaum, while engaged in this action, has been writing articles for the Gateway Pundit accusing judges of "sedition and treason" and suggesting they could be criminally prosecuted, an article shared by President Trump, which indicates a willingness to threaten the federal judiciary.

### Counter-Claim

Plaintiff's actions are tortious upon the Defendant, forcing him to retract or face a lawsuit, and there is reason to believe it is connected to foreign litigation against the Defendant which seeks to actually charge him with crimes (defamation being potentially criminal in Italian law), as opposed to Plaintiff's Complaint which imputes to Defendant's article statements about crimes committed which are not there. Defendant requests punitive damages be granted in recognition of these facts.

1. A retraction is a serious matter for a journalist reflecting upon his reputation, and before bringing this action Plaintiff offered the Defendant the choice between fully retracting his article or facing a lawsuit (Exhibit 2).

2. The standard way of haggling over the content of an article by a subject who disputes characterizations therein is to ask for a correction, which Plaintiff would undoubtedly know because of his frequent interactions with journalists. Defendant presented Plaintiff with a chance to negotiate corrections in his response to Plaintiff's cease-and-desist letter (Exhibit 2), which Plaintiff did not do, choosing to file this action instead.

3. Defendant asked Plaintiff, prior to the initiation of Plaintiff's complaint, whether an acceptable rephrasing would be to call the Plaintiff "an Israeli in the spyware business who

by his own admission has done business with intelligence agencies," rather than an Israeli spy (Exhibit 2). He declined to answer. This was the only characterization Plaintiff disputed in his cease-and-desist which Defendant would have even been able to correct. It would be difficult to come up with more clear-cut evidence Plaintiff's claim is vexatious and a waste of the Court's time.

4. If Plaintiff had answered in the affirmative to Defendant's suggested correction, and said to Defendant's face that the proposed rephrasing is meaningfully different from calling him an Israeli spy, we would not be here.

5. Therefore Plaintiff's action is tortious barratry upon the Defendant, because he was offered a Hobson's choice between harm to his reputation or to face a lawsuit.

6. There is reason to believe the attempt to prosecute the Defendant and seize his publication in Rome and Plaintiff's complaint here are linked, beyond just the coincidental timing as referenced in Defendant's Motion to Extend Time. In early March, Larry Johnson was in Moscow meeting with Konstantin Malofeev, the sanctioned Russian businessman who is an associate of the man suing Defendant in Italy. Johnson was the man who suggested John Paul MacIsaac give the Hunter Biden laptop to Plaintiff Apelbaum, a fact omitted in Line 21 of Plaintiff's complaint.

7. Whether Plaintiff's complaint was made in bad faith in view of the foregoing facts is up to the judgment of the Court.

8. It seems reasonable to ask for damages for Plaintiff's tortious conduct exceeding the minimum amount within the jurisdiction of the court where he filed his action, which is $75,000.

Respectfully submitted,
April 2, 2025


Jordan Arthur Bloom
3315 N Brandywine St
Arlington, VA 22207
Tel: 571-317-9823
Email: arthuriana89@gmail.com


*Pro se* certification
I declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

_Jordan Arthur Bloom_
Name of *Pro Se* Party (Print or Type)

_[signature]_
Signature of *Pro Se* Party

Executed on: April 2, 2025

Certificate of Service
I hereby certify that on April 2, 2025, a copy of this document was sent via email to Plaintiff's local counsel, Timothy B. Hyland, at the email address provided in complaint, thyland@hylandpllc.com.

_____
Signature

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
_____DIVISION

Yaacov Agelbaum and XRVision Ltd
--------------------------------
Plaintiff(s),

v.

Jordan Arthur Bloom
-------------------
Defendant(s),

Civil Action Number: 1:25cv147

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of _Motion to lift default, dismiss, counter-claim_
(Title of Document)

Jordan Arthur Bloom
-------------------
Name of *Pro Se* Party (Print or Type)

_[signature]_
-------------
Signature of *Pro Se* Party

Executed on: _April 2, 2025_ (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
(Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____(Date)