UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| YAACOV APELBAUM, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>JORDAN ARTHUR BLOOM,<br>*Defendant.* | No. 1:25-cv-00147-MSN-WBP |

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on two motions to dismiss. The first is Defendant/Counterclaimant Jordan Arthur Bloom's motion to dismiss Plaintiffs' complaint for lack of jurisdiction and failure to state a claim. ECF 13. The second is Plaintiffs/Counterclaim Defendants' motion to dismiss Bloom's counterclaim for failure to state a claim. ECF 20.

Because Plaintiffs have stated a claim over which there is jurisdiction, the Court will **DENY** the motion to dismiss Plaintiffs' defamation claim. And, because tortious barratry, the cause of action underlying Defendant's counterclaim, is not recognized under Virginia law, the Court will **GRANT** the Plaintiffs' motion to dismiss.

**I. BACKGROUND**

    **A. Factual Background of the Complaint**[1]

Yaacov Apelbaum is the founder of XRVision, Ltd., a cybersecurity and analytics company. ECF 1 ("Compl.") at 1. Plaintiffs Apelbaum and XRVision (collectively "Plaintiffs" or "Counterclaim Defendants") attracted media attention in 2020 for their role in examining Hunter

---

[1] The Court assumes the truth of Plaintiffs' factual allegations and draws all reasonable factual inferences in Plaintiffs' favor for purposes of this motion. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002).

Biden's laptop computer, purportedly "analyz[ing] the contents" of a copy of the hard drive "to determine the legitimacy of the [l]aptop." *Id.* ¶¶ 18, 21.

Jordan Arthur Bloom ("Defendant" or "Counterclaimant") is an independent journalist who maintains a blog on the platform Substack. *Id.* ¶ 22. On January 29, 2024, Defendant published an article, "The Role of Yaacov Apelbaum in the Hunter Biden Drama" ("First Article"), which gave rise to the statements at issue in this suit. *Id.* ¶ 24.[2]

The alleged defamatory statements in the First Article include:

- "**Yaacov Apelbaum is an Israeli spy**, and the sort of Israeli spy who would have good reasons to smear American facial recognition technology, because his company, XRVision, is a competitor." ECF 1 ¶ 25 (emphasis in complaint).

- "XRVision has provided sourcing to a bunch of conservative publications, including the Washington Times. **So this is an Israeli spy who's deeply involved in shaping the Hunter Biden story**." *Id.* (emphasis in complaint).

- "**What the case of Apelbaum actually represents is how badly the conservative movement has been penetrated by Israeli intelligence**, at the level of human intelligence and technology contracting." *Id.* (emphasis in complaint).

- "**It is a sad thing to watch an old man and American president be run around like this by dual loyalists and spies**." *Id.* (emphasis in complaint).

These statements were published on Defendant's Substack and also to thousands of viewers on Twitter and other platforms, then were "subsequently and virally" republished on other websites. *Id.* ¶ 43. Defendant intentionally failed to conduct any investigation before publishing

---

[2] Both the "First Article" and the "Second Article" are attached as exhibits to the complaint and incorporated by reference in the complaint. ECF 1 ¶¶ 24, 40.

these statements and "made zero effort to contact Plaintiffs to seek out their knowledge or position to include in his article." *Id.* ¶ 36.

In November 2024, Plaintiffs' attorney sent Defendant a cease-and-desist letter demanding he retract the article and apologize. *Id.* ¶ 38. On November 23, 2024, Defendant both responded via letter and published another article on his blog ("Second Article") reaffirming the First Article's statements and hyperlinking to the First Article. *Id.* ¶¶ 39-40.

Plaintiffs claim that Bloom's statements "directly harmed [them] because business partners and prospective business partners . . . have lost trust in Plaintiffs. This has led and continues to lead to direct personal and business losses." *Id.* ¶ 35. These losses have harmed each Plaintiff "in an amount greater than $75,000 to be determined at trial." *Id.* ¶ 52.

### B. Factual Background of the Counterclaim[3]

Bloom's counterclaim recounts that in response to the cease-and-desist letter, Bloom offered to "correct" the article, rephrasing the statement to instead call Apelbaum "an Israeli in the spyware business who by his own admission has done business with intelligence agencies." Compl. ¶ 3. Bloom believes that if Apelbaum had agreed to this correction the parties could have avoided litigation. *Id.* ¶ 4.

Therefore, Bloom submits, the Counterclaim Defendants' defamation action constitutes "tortious barratry . . . because [Bloom] was offered a Hobson's choice between harm to his reputation or to face a lawsuit." *Id.* ¶ 5. Further, the counterclaim alleges that the defamation complaint is "linked" to a proceeding against him in Italy based on an attenuated connection between Apelbaum and the man suing Bloom in Italy. *Id.* ¶ 6.

---

[3] The Court likewise assumes the truth of Counterclaimant's factual allegations and draws all reasonable factual inferences in Counterclaimant's favor for purposes of this motion. *Burbach*, 278 F.3d at 406.

### C. Procedural History

Plaintiffs filed their complaint (the "defamation action") on January 28, 2025. On March 5, 2025, Defendant was granted additional time to respond to the complaint. ECF 9. The Clerk entered default against Bloom on March 27, 2025. ECF 11. Magistrate Judge Porter later set aside that default on Bloom's motion. ECF 12; ECF 17. At the same time, Defendant filed a *pro se* counterclaim for tortious barratry (the "barratry action") against Plaintiffs and a motion to dismiss for lack of jurisdiction and failure to state a claim. ECFs 13-14. On April 21, 2025, Plaintiffs moved to dismiss the counterclaim for failure to state a claim. ECF 20. Both motions to dismiss are now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

### A. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action in which the Court lacks subject matter jurisdiction. It is the plaintiff's burden to demonstrate subject matter jurisdiction. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)).

### B. 12(b)(6)

A pleading in federal court must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must dismiss a claim if the plaintiff has failed "to state a claim upon which relief can be granted." The Court must determine whether the complaint or counterclaim alleges sufficient facts "to raise a right to relief above the speculative level[,]" and dismissal is appropriate only if the well-pleaded facts in the complaint or counterclaim fail to "state a claim

that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DEFENDANT'S MOTIONS TO DISMISS

The first motion before the Court is Defendant's motion to dismiss the defamation claim under Rules 12(b)(1) and 12(b)(6). ECF 13. Even construing *pro se* Defendant's filings liberally, *Jackson v. Lightsey*, 775 F.3d 170, 177 (4th Cir. 2014), his motion to dismiss fails twice over.

### A. Subject Matter Jurisdiction

While Defendant purports to seek dismissal for lack of subject-matter jurisdiction (ECF 13 at 1), he does not make any such direct argument. There is diversity of citizenship, and it is immaterial whether XRVision, Ltd. is incorporated in Singapore or New York for the purpose of diversity. 28 U.S.C. § 1332(a). Plaintiffs' claimed damages exceed $75,000, and Defendant has made no allegation of bad faith that could cause the Court to discount that claim at this time. *See JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 638 (4th Cir. 2010). Accordingly, the Court finds that subject matter jurisdiction exists.

### B. Failure to State a Claim

Defendant's motion to dismiss for failure to state a claim argues that Plaintiffs have not adequately pled defamation *per se* or shown actual damages, and that Defendant's statements are immune from suit under Virginia's Anti-SLAPP law, Va. Code § 8.01-223.2. Because Plaintiffs have alleged statements that amount to defamation *per se* (and therefore need not allege actual damages) and the Anti-SLAPP law does not apply, these arguments fail.

5

### 1. Defamation Under Virginia Law

Virginia law applies in this case. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79 (1938) ("A court exercising diversity jurisdiction applies the substantive law of the forum state."). Under Virginia law, the elements of defamation are: "(1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013). Although publication is not in dispute, elements two and three are.

An actionable statement is a statement that is both false and defamatory. *Id.* Defendant seeks to contest the falsity and defamatory nature of his statements. To determine whether a statement can be reasonably understood as stating actual facts and whether a statement may be reasonably capable of defamatory meaning, we must examine it in context or "in the sense in which it would be understood by the readers to whom it was addressed." *Schaecher v. Bouffault*, 772 S.E.2d 589, 595 (Va. 2015).

Further, the requisite intent depends on whether a plaintiff is a public figure or not. If Plaintiff is a public figure, then Defendant's statements must have been made with "actual malice," which is "knowledge of falsity or reckless disregard of . . . probable falsity." *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 n. 5 (4th Cir. 1993). However, if a plaintiff is not a public figure, he need only alleged that Defendant at least acted negligently in failing to ascertain the facts on which the publication was based. *Gazette, Inc. v. Harris*, 325 S.E.2d 713, 724-25 (Va. 1985).

### 2. Plaintiffs Adequately Allege Defamation.

Defendant seeks to assert three main arguments against Plaintiffs' claim: (i) that there is no defamation *per se*, and Plaintiffs failed to demonstrate real damages; (ii) that Plaintiff is a limited-purpose public figure, necessitating a showing of actual malice; and (iii) that Defendant's speech is protected because it was regarding matters of public concern. ECF 13. All of these arguments ultimately fail.

### i. Plaintiffs set forth an actionable statement (defamation *per se*).

First, Defendant argues that there is no defamation *per se* and that, consequently, Plaintiffs failed to plead special damages. Because Plaintiffs have adequately alleged defamation *per se*, this argument fails.

A statement is considered defamation *per se* if, among other things, it "prejudice[s] such person in his or her profession or trade." *Tronfeld v. Nationwide Mut. Ins. Co.,* 636 S.E.2d 447, 449-50 (Va. 2006). Defendant argues that "identification as an Israeli spy is [not] inherently damaging to one's reputation in business." ECF 13 ¶ 6. Keeping in mind that at this procedural juncture the Court is obliged to assume the truth of Plaintiffs' factual allegations, *Burbach*, 278 F.3d at 406, Plaintiffs' assertions overcome any dispute as to the "inherent" reputational impact of these statements. The complaint submits that Plaintiffs work in the cybersecurity industry, and Plaintiffs "periodically work[] with the [United States] government" in this field. ECF 1 at 1. This Court concludes that allegations of close ties to a foreign intelligence agency could prejudice a cybersecurity professional and his firm.

Further, Defendant argues that Plaintiffs failed to demonstrate "real damages." ECF 13 ¶ 11. However, defamation *per se* relieves a plaintiff of the requirement to show special damages. *Tronfeld*, 636 S.E.2d at 450. Because the Court has found defamation *per se*, Plaintiffs may recover compensatory damages for injury to reputation without demonstrating any financial loss. *Id.* Plaintiffs need only plausibly allege that the effect of the statements is "incompatible with the proper conduct of the business, trade, [or] profession" of Plaintiffs. *Fleming v. Moore*, 275 S.E.2d 632, 636 (Va. 1981). The complaint adequately alleges as much. ECF 1 ¶ 34.

Additionally, to the extent Defendant challenges the actionability of the statements based on falsity, his challenge fails. ECF 13 ¶ 10. At this stage, the Court must credit the Plaintiffs' well

pled allegation of the factual falsity of the statements. *Chapin*, 993 F.2d at 1092. The complaint alleges the statements are factually false, citing in support that "Mr. Apelbaum [has] renounced his Israeli citizenship and is presently a citizen of the United States of America, only," that "Mr. Apelbaum is not a foreign agent," and that Defendant "conceived a storyline in advance of any adequate investigation and then consciously set out to insert Plaintiffs into his preconceived narratives." ECF 1 ¶¶ 27, 33, 49. Viewing the complaint as a whole, these claims are plausible on their face and thus meet the standard to plead factual falsity. *Twombly*, 550 U.S. at 570. Accordingly, Plaintiff has adequately pled that the articles constituted actionable statements.

### ii. Actual Malice

Second, Bloom argues that Plaintiffs have not adequately alleged he published the statements with the required intent. ECF 13 ¶ 17. The standard of intent hinges on whether Plaintiff is a limited-purpose public figure, as Defendant asserts. *Id.* But because Plaintiffs have alleged that Bloom made his statements with actual malice, this Court need not resolve at this juncture whether or not Plaintiffs constitute public figures.

Actual malice requires "knowledge that [the statement] was false or . . . reckless disregard of whether it was false or not." *Gazette*, 325 S.E.2d at 721 (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)). Contrary to Defendant's claims, the complaint makes numerous allegations that go to actual malice: that "Bloom merely relied on tropes and his own pre-existing bigotry and biases, devoid of facts, and he knowingly sought to harm, and did harm, Plaintiffs," that he "deliberately avoided conducting any investigation into Plaintiffs and made zero effort to contact Plaintiffs," that he "has a history of writing anti-Semitic articles that accuse Jews and Israel of manipulating and/or controlling the U.S. government," and that his "publications and pattern of publishing are evidence that he conceived a storyline in advance of any adequate investigation and

8

then consciously set out to insert Plaintiffs into his preconceived narratives as discussed throughout the Complaint." ECF 1 at 1-2, ¶¶ 36, 49.

Other cases have found actual malice in quite similar circumstances. In a defamation case where the plaintiff was accused by media sites of orchestrating the violence at the "Unite The Right" rally in Charlottesville, VA, it was enough for the plaintiff to allege "that Defendants 'twisted' elements of his personal and professional history to fit a pre-conceived narrative." *Gilmore v. Jones*, 370 F. Supp. 3d 630, 678 (W.D. Va. 2019). There, as here, the defendant was alleged to have shoehorned his statements into a preconceived "storyline" and "departed from even the most basic journalistic standards by, for instance, failing to reach out to [Plaintiff]." *Id.* at 673. Accordingly, Plaintiffs' allegations of Defendant's lack of due diligence and shoehorning of their actions into a preconceived narrative about Israelis and Jews are adequate to plead actual malice.

### iii. Virginia Anti-SLAPP Law

Lastly, Defendant argues that his speech is protected under Virginia's Anti-SLAPP law, Va. Code § 8.01-223.2. ECF 13 ¶ 21. Under this statute, a defendant is immune from liability for statements regarding matters of public concern that would be protected under the First Amendment. Va. Code Ann. § 8.01-223.2. However, this immunity does not extend to statements that the defendant "knew or should have known were false or were made with reckless disregard for whether they were false." *Id.* In other words, immunity does not attach if a plaintiff has alleged actual malice. *See, e.g.*, *Gilmore*, 370 F. Supp. 3d at 682; *Vivera Pharms., Inc. v. Gannett Co.*, 107 Va. Cir. 394, 400 (Va. Cir. Ct. 2021). Because the Court has already found that Plaintiffs have alleged actual malice, Bloom's Anti-SLAPP argument fails at this juncture.

9

**IV. COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS**

The second motion before the Court is Apelbaum and XRVision's motion to dismiss the counterclaim. ECF 20. The counterclaim asserts a cause of action for "tortious barratry." ECF 14 ¶ 5. Because this is not a recognized private cause of action under Virginia law, Bloom has failed to state a claim.

This Court is not aware of—nor has Bloom pointed to—any Virginia precedent establishing a private cause of action for tortious barratry. It is true that the *crime* of barratry is statutorily recognized in Virginia.[4] Va. Code Ann. § 18.2-451. However, other jurisdictions have found that a private cause of action for barratry is *not* implied from a criminal statute. *See, e.g.*, *Pelletier v. Zweifel*, 921 F.2d 1465, 1512-13 (11th Cir. 1991); *Casanova v. Byers*, 2003 WL 22089330 at * 2 (6th Cir. Sept. 8, 2003); *DaimlerChrysler Corp. v. Kirkhart*, 561 S.E.2d 276, 283 (N.C. Ct. App. 2002); *Galinski v. Kessler*, 480 N.E.2d 1176, 1179 (Ill. App. Ct. 1985); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 948 F. Supp. 2d 538, 568-69 (D. Md. 2013); *Moiel v. Sandlin*, 571 S.W.2d 567, 571 (Tex. App. 1978). While Counterclaimant asserts that barratry is a "cognizable civil cause of action," he does not point to any relevant authority demonstrating as much. ECF 26.

Furthermore, this Court has recently held that barratry is not a tort under Virginia law. *Kissinger-Stankevitz v. Town of Tappahannock*, 750 F. Supp. 3d 590, 627 (E.D. Va. 2024) (dismissing civil conspiracy claim wherein the alleged underlying tort was barratry). This Court agrees with *Kissinger-Stankevitz* in finding that Bloom may not sustain a civil claim for barratry under Virginia law, and that his counterclaim must therefore be dismissed.

---

[4] In the criminal context, "barratry" is the offense of instigating or attempting to instigate a person or persons to institute a suit at law or equity. Va. Code Ann. § 18.2-451(a), (c).

## V. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Defendant/Counterclaimant's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim (ECF 13) is **DENIED**; and it is further

**ORDERED** that Plaintiff/Counterclaim Defendant's Motion to Dismiss for Failure to State a Claim (ECF 20) is **GRANTED**; and it is further

**ORDERED** that Defendant/Counterclaimant's Counterclaim is **DISMISSED WITH PREJUDICE**.

The Clerk is directed to mail a copy of this Opinion and Order to Defendant, *pro se*. Defendant is informed that pursuant to Fed. R. Civ. P. 12(a)(4)(A), an answer to Plaintiffs' Complaint is due within fourteen (14) days of the date of this Order.

**SO ORDERED.**

/s/
Michael S. Nachmanoff
United States District Judge

July 7, 2025
Alexandria, Virginia