FILED

UNITED STATES DISTRICT COURT
for the
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2025 JUL 10  A 10: 40

Yaacov Apelbaum and XRVision, Ltd )
    *Plaintiff* )
 )
v. )    Civil Action no. 1:25cv147
 )
Jordan Arthur Bloom )
    *Defendant, pro se* )
 )

## Defendant's Answer and Affirmative Defenses

Per Judge Nachmanoff's order on July 7, 2025, Defendant must answer Plaintiff's suit by July 21. Herewith his answer.

### Answer to Introduction of Plaintiff's Complaint:

Judge Nachmanoff's opinion on July 7 states that the Plaintiff has adequately alleged actual malice. The strong standard for actual malice is that it is demonstrated by showing some relevant fact which contradicts the narrative put forth in the alleged defamatory statement was uncovered by the Defendant but held back. That is not present here. Instead the Court is relying upon a standard of malice based on other other publications by the Defendant having nothing to do with the substance of his Complaint. But because it has been permitted to use Defendant's record of publication concerning the state of Israel to demonstrate actual malice toward the Plaintiff personally, he will clarify his point of view for the Court.

In 1996, the historian David Irving sued Deborah Lipstadt in the British High Court of Justice, alleging she and her publisher had libeled him for writing he was "one of the most dangerous spokespersons for Holocaust denial." In one of the more famous 20th century libel trials, Lipstadt successfully defended herself by demonstrating he was one. In 2025, a man of Israeli origin in the spyware business whose technology has been used to surveil dissidents, and selected to work on the Hunter Biden matter because of his capabilities in intelligence work, comes to a Virginia court to speak power to truth in the midst of an ongoing genocide committed by the Jewish state.

It is objectively true that assets of the State of Israel routinely influence the conservative movement in the United States, many of whom are not even concealed. The Plaintiff was involved in the conservative media's largest story of the 2020 election cycle, in a way intended to authoritatively demonstrate the legitimacy of the Hunter Biden files. Plaintiff is of Israeli origin, and the techniques of authentication used in that instance, as well as his current line of work are obviously relevant to intelligence work, by his own admission. Defendant could not have had knowledge of the falsity of the alleged defamatory statements because he does not believe them to be false. Plaintiff is Israeli and he is a spy. By what alchemy is the combination of these two words rendered defamatory?

What's more, Plaintiff is a co-inventor with an Israeli businessman who employs dozens of intelligence assets, a patent filed long after he was naturalized, and his involvement in the Hunter Biden matter could reasonably be understood as benefitting the interests of Israel.

As to Defendant's broader sensibility, which should not be relevant but has been made so, he believes, in the context of an ongoing genocide, in which just this week we were told concentration camps are planned for Gaza, it is germane and justifiable to explore by way of journalism why our own government has been unable to act to restrain this barbarism. It has a lot to do with the architecture of Israeli influence in the United States and their role in our technology economy. Those taking up this issue will always be called bigoted, and be accused of betraying an "obsession." Defendant knows this from experience. Defendant does oppose them in many circumstances because they act unjustly and in ways that are bad for this country. Defendant does not accept that it is bigotry, nor that it is evidence of malice to have brought these matters to public attention.

There is not another relationship like the U.S.-Israel one, which has only been made a U.S. ally by the unilateral action of the Executive Branch, is routinely relieved of its obligations under FARA, exempted from laws governing arms transfers, and speech related to it is policed by institutions with documented links to organized crime, like the Anti-Defamation League. In the private sector, a company like Facebook, whose top executives come from families involved with the Likud Party, have the ability and have demonstrated the willingness to choke of businesses or individuals because they are disfavored by the State of Israel. If ever there was a foreign relationship that cried out for aggressive journalistic scrutiny, it is this one, yet American reporters are also routinely fired because they are disfavored by the Israeli state. What is before the Court is whether the kind of journalism necessary to restore this relationship to normality will be permitted under law.

Whether or not the facts at issue here verge too far upon stereotypes about Jewish control, they are still facts. Whether one must state them without using words like "control" is a rigged game Defendant has no interest in playing, but perhaps the Plaintiff could provide a lesson how, after the Steele Dossier and the Hunter Biden affair, two scandals of national import in which Israelis or those partial to them were heavily involved, this sort of thing might be opposed or even simply talked about without falling afoul of "tropes" forbidden by the Israel lobby. Defendant is open to hearing it, but no citizen of this country requires permission from a minority group to speak the truth. And to forbid the speaking of truth in the public interest is a grave injustice.

Mr. Apelbaum has said Defendant is prejudiced against him because he is a devout Jew. Defendant is not, but his own religion, in the course of which practice he claims no particular piety, does teach that it is a blessing to be persecuted for the sake of truth. Defendant also wishes to note that Plaintiffs are likely to be disappointed in their quest to restore their reputation as "loyal subjects of the United States of America," because we are a republic of citizens.

Difficult decisions about matters at issue in this case will be before the next generation of this country's leaders, and Defendant offers his defense in the spirit of wishing to make sure they are able to do so as free and plainspeaking ones. So many have already been silenced. Defendant's real offense is refusing to be intimidated into a retraction, as the Plaintiff attempted to do before filing this suit, to prevent him from making true and reasonable statements about matters of public concern in which Plaintiff was involved, based on his actions, work history and public statements.

**Answers by line**

Line 2: Defendant is indeed a Virginia resident, and Defendant's statements were published from Virginia, but Plaintiff has not demonstrated any harm to himself arising from them.

Lines 3-4 have been clarified by Judge Nachmanoff's opinion and order on July 7, 2025.

Line 5: Plaintiff has not demonstrated any injury due to Defendant's publication, and "targeted" is a prejudicial word that would render all journalism an act of targeting.

Line 6: Plaintiff has not demonstrated any injury due to Defendant's publication, though Defendant is aware that his software has been used to identify dissidents in the United States.

Line 7: Plaintiff has not demonstrated any injury due to Defendant's publication.

Line 8: Defendant does indeed do business in Virginia.

Line 9: Defendant requests clarification as to what constitutes substantial revenue. Given his suppression by numerous tech platforms with foreign influence issues, this limits his ability to generate revenue, including algorithmic suppression and failure to provide domain mapping as advertised on the platform where the article in question was published.

Line 10: Defendant did not foresee this lawsuit.

Lines 11-16: Plaintiff Apelbaum here admits that he is involved in numerous lines of technology of relevance to intelligence work, including on an Internet of Things (IOT) company that does "OSINT engines, IoT, and cyber security solutions for urban surveillance and management." OSINT, for the benefit of the Court, stands for open source intelligence, and the Court is being asked to find it is defamatory to call a man working on intelligence technology a spy. XRVision was incorporated in Singapore in 2015 per the reporting of the *Arizona Republic* and therefore was not an American company when it was founded, though it may be now.

Line 17: It is not demonstrated that any decline in readership resulted following the publication of Defendant's article, nor is Defendant aware of any readers or clients who consider Plaintiff a source of "accuracy, technological excellence, legitimacy, integrity, honesty, competence, and reliability."

Line 18-21: Plaintiff admits here that he was key in "authenticating" the provenance of the Hunter Biden laptop, which was an attack on members of the First Family involving foreign intelligence operatives. Whether he has "gained some renown" for this sort of thing is unknown to the Defendant, though a cursory search shows no evidence to suppose that. Here he also admits that he was sought out when the FBI did not do with the laptop what the people responsible for the operation had hoped.

Lines 22-25: No objections as to fact, but Defendant denies the statements published are defamatory.

Line 26: Defendant does not believe these statements to be false.

Line 27: That Mr. Apelbaum is of Israeli origin is not in dispute, and the article does not say that he is a dual citizen.

Line 28: It does not go without saying that U.S. federal agencies do not want to work with individuals and entities actively engaging in espionage against the United States Government on behalf of Israel. The Israelis are permitted to do this all the time because politicians and civil service professionals will be fired, retaliated against, or defamed if they object.

Line 29: Presumably an operation to discredit the family of a president is the sort of thing spies engaged in espionage against the United States might try to do. There are many Israeli tech

companies quite similar to Mr. Apelbaum's that often win out over American ones because of the ways the Israelis compromise politicians and decision-makers.

Line 30: Nowhere does Defendant allege Plaintiff is "engaging in or assisting in human trafficking."

Line 31: It has been alleged by Hunter Biden's own counsel that the story told in the press about the laptop is not fully true. His attorney Kevin Morris has said something to the effect of the people involved in the operation were making mix tapes of the material. That would be consistent with the fact that on the version of the drive Defendant examined, there was material both from his phone and laptop on it. Defendant has not alleged that "Plaintiffs' authentication of the Laptop was fraudulent," perhaps Plaintiffs doth protest too much, but there are legitimate questions about the origin points of the material—there are gradations here short of fraud. For the purposes of this case it only need be noted that an Israeli in the spyware business provided the key authentication of the material, by his own admission here.

Line 32: Nowhere in Defendant's article does it state Plaintiff has committed a crime.

Line 33: As a matter of DOJ policy, violations of the Foreign Agents Registration Act are not being pursued as criminal matters, and at any rate the scope of FARA concerns advocacy, not the sort of activities Plaintiff has by his own admission been involved in.

Line 34: Defendant has not alleged that Plaintiff is a criminal.

Line 35: No "direct personal and business losses" are enumerated here.

Line 36: The article itself attests to investigation into Plaintiffs.

Line 37: Defendants considers his allegations not ridiculous even at this moment, and they are supported by evidence.

Line 38: This is true as to fact.

Line 39: Plaintiff did not take the opportunity to negotiate a proposed rephrasing of Defendant's article, and presented him with the option to retract or face a lawsuit. Defendant refused to be intimidated into a retraction.

Line 40: It does not seem to be a given that a hyperlink to an original article constitutes "republishing the First Article anew."

Line 42: Defendant denies statements described above are either false or defamatory.

Line 43: The Court ought to know that Defendant's alleged defamatory statements were not virally shared because Defendant is widely suppressed on social media platforms, presumably due to his adversarial coverage of Israeli activity in the United States. Plaintiff is able to see that the post on Twitter made by Defendant was reposted 11 times and "liked" 12 times, so presumably knows this is not true. Whether there is some other platform where Defendant's article was virally shared, perhaps to be accessed only by those who acknowledge Plaintiff's supposedly sterling reputation, is unknown to the Defendant.

Line 44: Presumably the plain and natural meaning of the phrase "Israeli spy" might encompass an Israeli involved in the spyware business who by his own admission has done business with intelligence agencies and was selected for involvement in an operation against the First Family

due to his skills relevant to intelligence work. Defendant has a difficult time understanding what facts are at issue here.

Line 45: Defendant's article does not state that Plaintiff is a dual citizen, and at any rate has, based on his registered patents, been in business with operatives known to work closely with Israeli intelligence since arriving in the United States. The theory that the Hunter Biden laptop operation, and the diary theft from Ashley Biden, has the heavy involvement of Israeli assets is fairly well supported. Here Plaintiffs are hand-waving about bigotry to get the Court to ignore demonstrable facts.

Line 46: Defendant does view it as important and in the public interest to draw attention to the Plaintiff's role in the Hunter Biden matter. Nothing about the way Defendant has done so is untrue.

Line 47: Defendant did not act with actual malice, because he offered an adjustment to language Plaintiff would not have been able to dispute, that he is an Israeli in the spyware business who by his own admission has done business with intelligence agencies. In Defendant's opinion that is not meaningfully different from what was stated in the original article, is substantially true, not in dispute, and therefore cannot have been published with reckless disregard for truth, and he asks the Court to agree.

Line 48: Defendant harbors no ill will toward the Plaintiffs, and considers persecution for the sake of truth a blessing.

Line 49: The idea that Defendant had "conceived a storyline in advance of any adequate investigation" is demonstrably undermined by several articles published by the Defendant in late 2020 and early 2021 based on the Hunter Biden laptop files which make no mention of an Israeli role. Defendant addressed the Israeli role in articles years later, therefore there was no preconceived storyline.

Line 50: These facts and circumstances do not make clear that Defendant subjectively entertained serious doubts about the truth of their statements about Plaintiffs, only that he later considered their role relevant.

Line 51: Again, Defendant does not allege Plaintiffs have committed a crime. It being the general orientation of federal law enforcement that Israelis do not commit crimes in the United States, Plaintiff's conviction for treason on the basis of Defendant's article seems rather unlikely, but Defendant admits to a certain sympathy toward those benighted patriots who continue to hold out hope for equal justice under law.

Line 52: Plaintiff has not demonstrated any harm due to the publication of Defendant's article.

### First Defense

Defendant is alleged to have defamed Plaintiff Yaacov Apelbaum *per se* because he has called him an Israeli spy. Needless to say, spies do not like to be identified, therefore the truth or falsity of the statement could not be established by consulting him. However, Defendant holds it to be true for the following reasons:

1. Plaintiff Apelbaum was characterized and quoted in the Arizona Republic in the following way in 2023, prior to the publication of Bloom's article:

    "Yaacov Apelbaum is in the spyware business. He's even been accused of being a spy. …

>Apelbaum said he was from Israel and immigrated to the United States in his late 20s. His Social Security number was issued in Massachusetts in 1988, records show.
>
>Some of Apelbaum's close business associates have ties to foreign intelligence and military agencies, including the Israeli Defense Forces.
>
>XRVision was founded in Singapore in 2015. It bills itself as a specialist in artificial intelligence technology and markets facial recognition software to governments worldwide.
>…
>
>There's no evidence to suggest Apelbaum, 60, is a spy. He has acknowledged contracting with government intelligence and defense agencies, but he's tight-lipped about much of his background.
>
>'I used to operate in that world,' he said, declining to elaborate."
>
>Plaintiff Apelbaum, in other words, has been quoted publicly stating he operated in the world of intelligence agencies.

2. Plaintiff Apelbaum is a co-inventor, with names listed on a U.S.-registered patent, with Mati Kochavi, an Israeli businessman who employs many intelligence operatives of that country.

3. He is in the spyware business, facial recognition software being tightly contested among many different countries and being a significant business mostly in the public sector.

4. He has been involved in an operation to discredit members of the First Family in an election year, and was sought out for that role because of skills relevant to intelligence work based on statements in his Complaint. Discrediting a Democratic president through the Hunter Biden laptop operation would have been in the interest of Israel because while both parties are notably supine in terms of permitting American interests to give way to Israeli ones in the Middle East, Republicans tend to be even more servile.

These facts are eminently sufficient to make Defendant's characterization of the Plaintiff in print both true and reasonable, because a plain and natural reading of the phrase "Israeli spy" would be a person like this. To call someone a spy does not inherently allege the commission of a criminal act, either.

The elliptical statements about the Plaintiff in the Arizona Republic are typical of the way journalists, in fear of retaliation from vengeful Zionists, are forced to hedge, since they are often fired for the barest kind of adversarial coverage toward Israel. But the clear and specific way Defendant has characterized him is not just legal, but perfectly reasonable and defensible.

It is undisputed that the Plaintiff was involved in the Hunter Biden matter. It is undisputed that he is of Israeli origin. It is undisputed that he is in the spyware business currently and has been selected for involvement in an operation targeting the First Family because of his skills related to intelligence work. It is understandable that a spyware dealer would not himself wish to be called a spy, but my concern as a journalist is for the public interest. This is transparently foolish and risible, asks journalists to torture the English language beyond reasonable limits.

### Second Defense

The statements alleged to be defamatory, even if they are false, which Defendant does not believe them to be, lack the requisite degree of fault necessary for a successful defamation claim. It is reasonable to infer from the facts demonstrated about the Plaintiff that he is an Israeli spy.

Nor is Defendant the first to say so, which raises the question of why Plaintiff has chosen to sue him rather than others who have so accused the Plaintiff.

### Third Defense

Defendant's characterizations being either true, or false but lacking in the requisite degree of fault, were done in a reasonable manner, and concern a matter of public interest. They are therefore privileged under Virginia's anti-SLAPP law and the First Amendment.

### Fourth Defense

Plaintiff is a limited-purpose public figure as pertains to his involvement in the Hunter Biden matter. This is a scandal of national importance bearing on the outcome of a presidential election, and covering how the material was disseminated and authenticated is demonstrably in the public interest. In order for a defamation claim against a journalist by a public figure to succeed, he must demonstrate actual malice. Defendant has no actual malice toward Plaintiff.

Respectfully submitted,
July 10, 2025
Jordan Arthur Bloom

3315 N Brandywine St
Arlington, VA 22207
arthuriana89@gmail.com
571-317-9823

*Pro se* certification
I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.

_Jordan Arthur Bloom_
Name of *Pro Se* Party (Print or Type)

_[signature]_
Signature of *Pro Se* Party

Executed on: _July 10, 2025_

Certificate of Service
I hereby certify that on July 9, 2025, a copy of this document was sent via email to Plaintiff's local counsel, Timothy B. Hyland, and *pro hac vice* counsel, Jonathon Burns at the email addresses provided in complaint, thyland@hylandplle.com and john@burns-law-firm.com.

_[signature]_