**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| YAACOV APELBAUM,<br><br>-and-<br><br>XRVISION, LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>JORDAN ARTHUR BLOOM,<br><br>Defendant. | ) | Civil Action No.: 1:25-cv-147-MSN-WBP<br><br>**JURY TRIAL DEMANDED** |

# FIRST AMENDED COMPLAINT

The plaintiffs, Yaacov Apelbaum ("**Apelbaum**") and XRVision, Ltd. ("**XRV**") (together, "**Plaintiffs**"), by counsel, state the following as their First Amended Complaint against the defendant, Jordan Arthur Bloom ("**Bloom**" or "**Defendant**"), and allege upon knowledge and belief as follows:

## INTRODUCTION

Apelbaum is a cybersecurity and image and analytics technology expert who owns XRV, a company specializing in cutting-edge AI-based analytics and award-winning intelligent cyber security IoT technology. Plaintiffs periodically works with the government in matters related to their profession and technological capabilities. On January 29, 2024, Bloom, a journalist, published an article on his blog in which he accused Plaintiffs of being Israeli spies working against American interests, working to manipulate and/or harm former President Biden and his family, engaging in human trafficking, using the tradecraft of espionage to infiltrate and manipulate conservative political groups and media outlets to influence the American public, and engaging in industrial espionage and

theft to procure American technology to give both Plaintiffs as well as their purported masters (the Israeli government) trade and national security benefits as opposed to the U.S. government and U.S. businesses. Bloom's statements are ridiculous, baseless, provably false, defamatory, concern the Plaintiffs, and have caused considerable harm to Plaintiffs: unsurprisingly, the U.S. Government (not to mention most U.S. businesses) does not like working with accused spies or their companies. Bloom conducted zero research or investigation into his accusations, and he made no effort to contact Plaintiffs to ask them for their position in the face of such serious, and yet absurd, allegations. Bloom made his statements either with knowledge of their falsity or with a reckless disregard as to their truth or falsity.

Bloom's writings betray an obsession and serious dislike for both Jews and Israel. Bloom has a history of writing anti-Semitic articles that accuse Jews and Israel of manipulating and/or controlling the U.S. government and its trade and economy. Thus, though he is an American citizen, Apelbaum's status as a devout Jew automatically renders him suspect to Bloom. In writing his defamatory statements about Plaintiffs, Bloom merely relied on tropes and his own pre-existing bigotry and biases, devoid of facts, and he knowingly sought to harm, and did harm, Plaintiffs. This suit is Plaintiffs' effort to restore their reputations as loyal subjects of the United States of America and industry leaders, and to be made whole.

## JURISDICTION AND VENUE

1. Plaintiffs incorporate by reference all allegations contained in each preceding Paragraph as though fully restated and set-forth, herein.

2. This action arises under Virginia law because Defendant is a Virginia resident, and because Defendant's statements were published in Virginia, to Virginia residents, and caused ultimate injury to the Plaintiffs in Virginia.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendant Bloom resides in Arlington, Virginia, and because the statements at issue were made in Virginia.

4. This Court has subject matter jurisdiction pursuant to Article III of the United States Constitution and 28 U.S.C. § 1332. The amount in controversy exceeds $75,000, exclusive of interest and costs, and there is diversity of citizenship.

5. This Court has personal jurisdiction over Defendant under law and the Due Process Clause of the United States Constitution. The claims in this Complaint arise from Defendant's tortious conduct which caused injury in Virginia, and Defendant's substantial business and other activity in Virginia. Exercising jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice because the Defendant deliberately targeted Plaintiffs by making false and defamatory statements about them. The injury resulting from Defendant's tortious conduct occurred primarily within Virginia.

6. Defendant injured Plaintiffs in the Commonwealth of Virginia by his conduct inside the Commonwealth. Defendant is aware that Plaintiffs have and continue to conduct business with the U.S. Government and Defendant's publication was designed to target and incite a Virginia audience.

7. Defendant's statements, published to persons in Virginia, ultimately resulted in injury to Plaintiffs in Virginia. Defendant's false and defamatory statements were directed at, received, and read by individuals and businesses in Virginia. As a result, Plaintiffs have experienced irreversible personal and professional damage in Virginia, including reputational harm, the loss of business opportunities in Virginia, irreparable damage to Plaintiffs' professional ambitions and business interests, as well as the loss of friendships with individuals in Virginia.

8. Upon information and belief, Defendant regularly does and/or solicits significant business in Virginia, engages in other persistent courses of conduct, or derives substantial revenue

from goods sold to, goods used or consumed, or services rendered in Virginia, such that he has purposefully availed himself of its laws.

9. Defendant generates substantial revenue from the Commonwealth of Virginia as a result of his work and content-driven business model.

10. Therefore, Defendant should have foreseen that he would be forced to answer for his tortious conduct, and the resulting injuries to Plaintiffs, in a Virginia court.

## PARTIES

11. Apelbaum is an expert in artificial intelligence and facial recognition software and its uses in the security context. He is the President and Chief Technology Officer of Plaintiff XRVision Ltd. Apelbaum is a resident and citizen of the State of New York.

12. XRV is a New York corporation specializing in facial recognition software used in security contracting. At all times relevant hereto, XRV's principal place of business is located in the State of New York.

13. Bloom is a blogger and journalist. Bloom is a resident of Arlington, Virginia, and is a citizen of Virginia.

## FACTUAL ALLEGATIONS

14. Plaintiffs incorporate by reference all allegations contained in each preceding Paragraph as though fully restated and set-forth, herein.

15. Apelbaum founded XVR in 2015. XRV is a security firm, specializing in cutting-edge mobile and wearable AI-based analytics and award winning intelligent cyber security and IoT technology. It solves some of the toughest analytics and cyber security challenges that law enforcement and government agencies face.

16. Before co-founding XRV, Apelbaum was the Head of Engineering and CTO for the Safe/Smart City product line in one of the world's leading safe/smart city companies, offering comprehensive and integrated platforms in a wide range of analytics, homeland security, critical infrastructure, OSINT, and smart/safe city spaces. Apelbaum's technology expertise includes leading R&D and Center of Excellence technology teams in developing and delivering, Big Data, video analytics, OSINT engines, IoT, and cyber security solutions for urban surveillance and management, critical infrastructure, border protection, and national security.

17. Apelbaum also maintains a blog and publishes articles on numerous topics, including but not limited to news analysis, politics, and current events.[1] Prior to Defendants' defamatory statements, Plaintiffs' readers and clients recognized Plaintiffs as sources of accuracy, technological excellence, legitimacy, integrity, honesty, competence, and reliability.

18. As a cybersecurity and cyber forensics expert, Plaintiffs have gained some renown for their work in examining the propriety of electronic elections/voting systems as well as the provenance and authentication of electronic materials, including but not limited to the Hunter Biden Laptop ("Biden Laptop").

19. The Biden Laptop became a cause célèbre in the lead-up to the 2020 Presidential Election. Shortly before the election, a computer repair shop owner by the name of John Paul Mac Isaac came to the media to announce that Hunter Biden had dropped off his Laptop for repair at Mac Isaac's shop in Delaware, only to ultimately abandon the Laptop. When he could not get Biden to claim his repaired Laptop, Mac Isaac claimed it as his own and reviewed the content. According to Mr. Mac Isaac, the Biden Laptop purportedly contained hundreds of gigabytes of communications,

[1] *See* apelbaum.wordpress.com.

audio recordings, pictures, and video recordings, showcasing Hunter Biden engaged in inappropriate and illegal acts and behavior.

20. Early in 2020, Mac Isaac contacted the FBI after discovering the Biden Laptop contained the purported evidence of misconduct by Hunter Biden and others. The FBI took the Laptop, but did not pursue any criminal investigation of Hunter Biden, until public uproar and investigations by other federal agencies made avoiding prosecution politically impossible. Hunter Biden was later pardoned by President Biden.

21. Mac Isaac gave a copy of the Biden Laptop's hard drive to Plaintiffs, and Plaintiffs then analyzed the contents to determine the legitimacy of the Laptop. Plaintiffs opined that the Laptop was, in fact, authentic.

22. Defendant Bloom maintains a blog on the Substack[2] blogging platform, entitled "Arthuriana," and accessible at https://arthuriana.substack.com/ ("**Substack**").

23. Bloom, also known as J. Arthur Bloom or Arthur Bloom, has written and/or edited for a number of other blogging/media outlets, including but not limited to *The Washington Post*, *The Guardian*, *Newsweek*, *The New York Post*, *American Affairs*, *UnHerd*, *The Daily Caller*, *Quillette*, *The American Conservative*, *Modern Age*, *The Catholic Herald*, and *The American Spectator*, among others.

24. On January 29, 2024, Bloom authored an article on his Substack, entitled "The Role of Yaacov Apelbaum in the Hunter Biden Drama" ("**First Article**").[3] *See* **Exhibit 1** – **First Article**, attached and incorporated as though fully set forth and restated herein.

[2] https://www.substack.com

[3] *See* https://arthuriana.substack.com/p/the-role-of-yaacov-apelbaum-in-the?utm_source=publication-search

25. In his First Article, Bloom made multiple, factually false and defamatory statements, including, but not limited to:

a. "**Yaacov Apelbaum is an Israeli spy**, and the sort of Israeli spy who would have good reasons to smear American facial recognition technology, because his company, XRVision, is a competitor. The Israelis do not want American-born technology used by, for instance, CBP,[4] because they want to sell it to us instead, and they also have a hand in some of the human trafficking rackets. In some cases, this wicked nation will steal the technology and sell it back to us. What this means is that politicians' unwillingness to forthrightly address the problems in the U.S.-Israel relationship is a clear threat to the American defense-industrial base."

b. "Apelbaum appears to have had contact with Garrett Ziegler, Ron Johnson, Matt Gaetz, and James O'Keefe, and appears to have had a fairly close relationship with the Gateway Pundit. XRVision has provided sourcing to a bunch of conservative publications, including the Washington Times. **So this is an Israeli spy who's deeply involved in shaping the Hunter Biden story**."

c. "**What the case of Apelbaum actually represents is how badly the conservative movement has been penetrated by Israeli intelligence**, at the level of human intelligence and technology contracting."

d. "I should think the Roman perspective on this would be that a president who fails to go after the people who went after his son is weak. President Biden was angrily quoting the 'suckers and losers' story, which comes from the poorly sourced Atlantic reporting of dual citizen Israeli prison guard Jeffrey Goldberg. **It is a sad thing to**

[4] U.S. Customs and Border Patrol.

**watch an old man and American president be run around like this by dual loyalists and spies**."[5]

26. All of Bloom's statements about Plaintiffs ("**defamatory statements**") are false.

27. While Mr. Apelbaum emigrated from Israel in the 1980's, he subsequently renounced his Israeli citizenship and is presently a citizen of the United States of America, only.

28. It goes without saying that U.S. federal agencies – and in particular law enforcement agencies – do not want to work with individuals and entities actively engaging in espionage against the United States Government as well as businesses, individuals and entities engaging in corporate espionage, theft, and human trafficking. Yet, this is precisely what Bloom's defamatory statements allege.

29. Bloom's statements are defamatory per se, because they accuse Plaintiffs of being Israeli spies engaging not only in espionage against the United States, but also in corporate espionage and sabotage, for the purposes of damaging American defense and security interests as well as its domestic defense and security industry.

30. Bloom's statements are also defamatory per se, because they implicitly or directly state that Plaintiffs are engaging in or assisting in human trafficking, theft of trade secrets, fraud, and engaging in espionage and sabotage of Plaintiffs' business partners, friends, and allies within the media, not to mention deliberately misleading the general public.

31. Bloom's statements are also defamatory per se because they implicitly or directly state that the Hunter Biden Laptop story, insofar as Apelbaum and XRV are involved, is a fraud, that Plaintiffs' authentication of the Laptop was fraudulent, and that Plaintiffs' efforts in this respect have been consistent with Plaintiffs' role as a dual-citizen, dual-loyalist, spying for a foreign government,

[5] For each of these quotes containing emphasis, the emphasis has been added.

acting as a State adversary against U.S. national interests, and engaging in an espionage operation to harm and embarrass former President Biden and his family to the benefit of Israeli geopolitical interests.

32. The defamatory statements are defamatory per se because they impute to Plaintiffs the commission of criminal offenses for which the Plaintiffs, were the statements true, could be indicted and punished.

33. For just one example, if Plaintiff Apelbaum were truly operating as an agent for the Israeli government, he could be prosecuted for failing to register as such with the U.S. Attorney General, in violation of the Foreign Agents Registration Act ("**FARA**"). Mr. Apelbaum is not a foreign agent, and he has not had need to register with the Attorney General's office.

34. The defamatory statements are defamatory per se because they impute to the Plaintiffs that they are untrustworthy criminals, engaging in espionage against the United States government and private businesses in the United States, and unsuitable business partners for governmental entities, as well as private concerns. As such, the defamatory statements prejudice Plaintiffs in their profession and business operations.

35. Bloom's statements have directly harmed Plaintiffs because business partners and prospective business partners within U.S. federal and state governments as well as U.S. private businesses, have lost trust in Plaintiffs. This has led and continues to lead to direct personal and business losses.

36. Before publishing his First Article, Bloom deliberately avoided conducting any investigation into Plaintiffs and made zero effort to contact Plaintiffs to seek out their knowledge or position to include in his article.

37. Bloom knew his allegations were ridiculous before, during, and after publication, and had no evidence to support his false and defamatory statements.

38. In November of 2024, Plaintiffs, through their attorney, sent Bloom a cease-and-desist letter ("**Letter**"), confronting him about his defamatory statements, demanding that they be retracted, and further demanding an apology.

39. On or about November 23, 2024, Bloom responded to the Letter ("**Response**"). Far from issuing a retraction, Bloom doubled and tripled down.

40. On November 23, 2024, Bloom published an article on his Substack ("**Second Article**") about the Letter and Response, publishing both, and discussing and hyperlinking to the First Article, thereby republishing the First Article anew. *See* **Exhibit 2 – Second Article**, attached and incorporated as though fully set forth and restated herein.

41. On October 1, 2025, Bloom published a third article on this Substack ("Third Article"). *See* **Exhibit 3** – Third Article. The Third Article generally discussed the instant suit, baited and mocked Plaintiffs' counsel, and threatened Plaintiffs with claims for malicious prosecution.

42. Bloom also accused Plaintiffs of working with a "notorious" hacker, adding said hacker to the XRV Board of Directors. To wit:

> "I have also informed the Court in my latest filing that to the board of XRVision was recently added the notorious Indian hacker Rajat Khare."

43. Bloom directed his audience to review his reply brief to his failed motion for summary judgment (thereby incorporating the statements there into his blog post), in which he stated:

> "Plaintiff's behavior is highly consistent with the operating methods of Mr. Apelbaum and XRVision, to whose board the notorious Indian hacker Rajit Khare was added in the last couple of years, reporting of which still characterizes it as a Singaporean company … There is further reason to believe Mr. Khare is state-backed in some of his activities, which would explain why he has been so effective in silencing critical reporting on him in India and elsewhere."

44. The word hacker, as used in common parlance, refers to a "person who illegally gains access to and sometimes tampers with information in a computer system."[6]

45. This is certainly what Bloom meant because he described the purported "hacker" and board member as "notorious," which itself means "widely and unfavorably known."[7]

46. Bloom trades on his self-advertised, yet unsubstantiated, mystique of being either an intelligence community operative, alumnus, or otherwise intelligence community adjacent with information networks or resources.

47. So, when Bloom makes remarks such as "there is further reason to believe Mr. Khare is state-backed in some of his activities," without providing any evidence, his readers are deliberately led to believe that Bloom has access to clandestine information only available to those with access to clandestine sources of information, thus bolstering his readers' belief in the veracity of the statements.

48. Bloom's statements about Plaintiffs are defamatory per se. Hist statement that Khare is a state-sponsored cybercriminal, and his juxtaposition of this statement with references to Plaintiffs is designed to further tarnish Plaintiffs' reputations and harm their profession and business interests. Bloom's readers know he has accused Plaintiffs of being Israeli spies – Bloom repeats this defamatory falsehood in every blog post and court filing he composes about Plaintiffs. Bloom's juxtaposition of Khare and Plaintiffs

49. Bloom's statements about Plaintiffs in paragraphs 42 and 43 are categorically **false**.

50. Plaintiffs do not know Rajat/Rajit Khare and have never had any dealings with him.

51. Rajat/Rajit Khare is not on, and never has been on the board of directors of XRV.

52. Rajat/Rajit Khare is not employed by XRV and has absolutely no affiliation with the Plaintiffs, whatsoever.

---

[6] https://www.merriam-webster.com/dictionary/hacker (last accessed October 8, 2025).
[7] https://www.merriam-webster.com/dictionary/notorious (last accessed October 8, 2025).

53. Bloom's statements linking Khare to Plaintiffs have directly harmed Plaintiffs because business partners and prospective business partners within U.S. federal and state governments as well as U.S. private businesses, have lost trust in Plaintiffs. This has led and continues to lead to direct personal and business losses.

54. Before publishing his Third Article, Bloom deliberately avoided conducting any investigation into Plaintiffs and made zero effort to contact Plaintiffs to seek out their knowledge or position to include in his article. Bloom failed to conduct reasonable, meaningful research into Plaintiffs before publishing any of his articles.

55. Bloom's statements against Plaintiffs were designed to harass, defame, and harm Plaintiffs, and damage their ability to engage in their trade and business, and also damage their reputation and branding by continuing and adding to the false and defamatory accusation that Plaintiffs are Israeli spies engaging in human trafficking, industrial espionage and sabotage, cybercrimes, and other criminal activities.

## CAUSE OF ACTION

### Count I: Defamation

56. Plaintiffs incorporate by reference all allegations contained in each preceding Paragraph as though fully restated and set-forth, herein.

57. Defendant's statements described above (collectively, the "**defamatory statements**") are false and defamatory.

58. Defendant published to thousands of viewers on *Twitter*, his Substack, and other platforms directed at and received by Virginia audiences, false statements as discussed throughout this Complaint. Upon information and belief, Defendant's defamatory statements were subsequently and virally shared and republished on other websites.

59. Defendant's false and defamatory statements were intended as assertions of fact and/or are defamatory by implication, as the Defendant, through the plain and natural meaning of his statements (and all inferences, implications, and insinuations fairly attributable to them), intended for his readers to accept as fact his defamatory assertions against Plaintiffs.

60. Defendant deliberately implied factual assertions about Plaintiffs by pointing out purported biographical facts about Apelbaum and XRV (e.g., that Apelbaum is a dual-citizen of the United States as well as Israel) alongside purported facts related to Bloom's theories that the Hunter Biden Laptop scandal was orchestrated by the Israeli government, with assistance of Plaintiffs as Israeli spies. By alleging these facts in close proximity to one another and against the backdrop of Defendant's previously published anti-Semitic conspiracy theories about Israeli and Jewish infiltration/ penetration of the U.S. Government, conservative political groups, conservative media outlets, and relative level of 'control' of American politics and trade, Defendant deliberately intended for any gaps in factual assertions made about Plaintiffs to be easily filled in by the audience and understood to be allegations of fact. Indeed, the inferences are so obvious, the dots so easy to connect, that the only reasonable interpretation of Defendant's publications is that they are defamatory assertions of fact.

61. As detailed above, Defendant's false and defamatory statements concerned Plaintiffs and had Plaintiffs as their primary subject. The Defendant's defamatory statements were designed to (1) injure Plaintiffs' reputations, (2) subject Plaintiffs to contempt and disgrace, (3) damage Plaintiffs' business and business relationships, and (4) incite harassment of Plaintiffs.

62. As detailed above, Defendant acted with actual malice. His false and defamatory statements about Plaintiffs' background, business dealings, status, and objectives, were made with knowledge of their falsehood or reckless disregard for their truth or falsity.

63. As detailed above, Defendant failed to investigate the facts he alleged about Plaintiffs in his various publications and severely departed from journalistic standards despite presenting his publications as fact-based journalism. Defendant harbored and continues to harbor ill will toward Plaintiffs.

64. Moreover, each of Defendant's publications and pattern of publishing are evidence that he conceived a storyline in advance of any adequate investigation and then consciously set out to insert Plaintiffs into his preconceived narratives as discussed throughout the Complaint.

65. Together, these facts and circumstances make clear that Defendant subjectively entertained serious doubts about the truth of their statements about Plaintiffs, was willfully blind to any facts that might have undermined his preconceived narrative, and deliberately published false facts and stories about Plaintiffs.

66. Defendant's statements are also defamatory per se because they falsely impute to Plaintiff the commission of criminal offenses involving moral turpitude— broadly, in this instance, that Plaintiffs, as part of some Israeli espionage program aimed at former President Biden and his family, helped steer the narrative in American mainstream and conservative media, and that Plaintiffs continue to operate as spies for the Israeli government, and assist the Israeli government in human trafficking and industrial espionage, among other false and defamatory allegations. If true, these allegations would cause Plaintiffs to be indicted, punished, and even potentially convicted of treason. Defendant's statements also prejudice Plaintiffs in their profession as cybersecurity and facial recognition experts, undermining Plaintiffs' ability to work for public and private entities in the United States.

67. Defendant's false and defamatory statements harmed and continue to harm Plaintiffs both personally and professionally. Defendant is individually liable to Plaintiffs for the personal and

professional harm he caused by defaming Plaintiffs, each in an amount greater than $75,000 to be determined at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Apelbaum and XRV respectfully request that this Court enter judgment in their favor and against Bloom, and respectfully request that this Court grant the following relief:

a. An award of presumed and actual damages to compensate Plaintiffs for their reputational, emotional, and professional injuries, in an amount to be determined at trial;

b. An award of punitive damages, in an amount to be determined at trial;

c. An award of reasonable attorneys' fees and costs to the fullest extent permitted by law; and

d. Such other and further relief as the Court deems just and proper.

Dated: October 29, 2025.

Respectfully submitted,

/s/ Timothy B. Hyland
Timothy B. Hyland (VSB No. 31163)
Counsel for Yaacov Apelbaum
and XRVision, Ltd.
HYLAND LAW PLLC
11710 Plaza America Drive, Suite 160
Reston, VA 20190-4756
(703) 552-4733 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com

/s/ John C. Burns
John C. Burns
Counsel for Yaacov Apelbaum &
XRVision, Ltd.*
BURNS LAW FIRM
P.O. Box 191250
St. Louis, Missouri 63119
P: (314) 329-5040
TBLF@pm.me

*Admitted pro hac vice