**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| YAACOV APELBAUM, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 1:25-cv-147-MSN-WBP |
| v. | ) | |
| | ) | |
| JORDAN ARTHUR BLOOM, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFFS' TRIAL BRIEF**

## I. Summary

Plaintiffs Yaacov Apelbaum ("Apelbaum") and XRVision, Ltd. ("XRVision") (together, "Plaintiffs") submit this trial brief pursuant to the Court's Order of April 15, 2026 (ECF 132). This is a defamation action arising from publications on Defendant Jordan Arthur Bloom's ("Bloom") Substack blog and on X (formerly Twitter). The publications accused Apelbaum, a private American cybersecurity professional, of being a present-day Israeli spy engaged in industrial espionage. The publications also falsely tied Plaintiff XRVision, Ltd. to a notorious foreign cybercriminal. The Court denied Bloom's motion to dismiss, found actual malice adequately alleged, rejected Bloom's anti-SLAPP defense, and dismissed his counterclaims. (ECF 28).

The record establishes each element of Plaintiffs' case. Bloom admits publication. He admits that he does not know whether Apelbaum is a spy. Bloom Dep. Tr. 98:16-19; 89:4-7; 93:12-13. *See* Exhibit B. He admits he had no confidential journalistic source. He admits he conducted no pre-publication investigation. He had Apelbaum's contact information before publication but chose not to seek a response. The person he later identified as his purported source, Charles Johnson, purportedly supplied information roughly *two years after* the First Article already was in print. Bloom also reaffirmed the "Israeli spy" charge in an April 6, 2026 written communication to counsel. He described the charge as "very direct" and "substantially true." *See* Exhibit C. Certified public records from the New York Department of State, the State of Delaware, and from Singapore establish the corporate separateness at the heart of this case. The Khare-related investment narrative on which Bloom's truth defense rests concerns a legally distinct non-party corporation rather than XRVision.

Plaintiffs address below the four topics the Court directed the parties to brief: (i) Plaintiffs' status as private figures; (ii) the defamatory *per se* character of the Third Article; (iii) the

inapplicability of the Virginia anti-SLAPP statute; and (iv) the method by which Plaintiffs will prove falsity of each defamatory statement.

## II. Background

Three publications frame this action. The First Article appeared on January 29, 2024, and falsely described Apelbaum as a present-day "Israeli spy" who was "involved in shaping" the Hunter Biden laptop story, used XRVision to target American commercial competitors on Israel's behalf, participated in "human trafficking rackets," and facilitated state-sponsored intellectual property theft. The Second Article repeated the "Israeli spy" theme and described Apelbaum as an "Israeli in the spyware business." The Third Article added the assertion that Rajat Khare, an Indian cybersecurity figure whose prior firm Appin has been the subject of major global investigative reporting, had been "added" to the board of XRVision.

Bloom concedes publication. His own Trial Brief[1] admits that he "published" each article, that he "forthrightly called Plaintiff Apelbaum an Israeli spy," and that he "reaffirmed" his characterization in a second publication after receiving a cease-and-desist letter. *See* Exhibit A at 1-2, 8. The case thus reduces to falsity, fault, and damages.

## III. Statement of Facts

### A. Plaintiff Yaacov Apelbaum.

Apelbaum is a private American cybersecurity professional and an American citizen. During the mid-1980s, years before Bloom was born, Apelbaum served seven years in the Israel Defense Forces as a combat intelligence officer in a paratrooper unit, a portion of that service having been in the reserves. That service concluded approximately forty years before Bloom's publications. Apelbaum has not held any intelligence role, governmental or private, since that

[1] Bloom's trial brief does not appear to have been yet filed with the Court, but Bloom submitted it to counsel. It is attached as Exhibit A.

service ended. He is not and has never been a media figure. He did not inject himself into the controversies Bloom invented about him.

When Bloom published the First Article, he did not know that Apelbaum was a U.S. citizen. Bloom admitted this in his deposition. *See* Exhibit B (Bloom Dep. Tr. 126:22-127:5). He admitted that he does not know whether Apelbaum is a spy. *See* Exhibit B (Bloom Dep. Tr. 98:16-19; 89:4-7; 93:12-13). The absence of pre-publication knowledge as to basic biographical facts about his subject is itself probative of the reckless state of mind in which Bloom published.

Bloom had Apelbaum's contact information before he wrote a single word of the First Article. Bloom acknowledged in the First Article itself that he and Apelbaum had previously communicated. Bloom could have sought Apelbaum's response to the accusations before publishing them. He chose not to. A publisher who possesses his subject's contact information and has already corresponded with his subject, yet publishes grave accusations without seeking a response, confesses the recklessness of his process by his own conduct.

**B. Plaintiff XRVision, Ltd. - A New York Corporation.**

XRVision is a New York corporation formed on March 8, 2016, under Section 402 of the New York Business Corporation Law. Exhibit E. It holds New York Department of State File Number 160308010293. Its registered office is in Suffolk County, New York. Apelbaum founded the corporation and serves as its principal. Plaintiffs will offer as trial evidence the New York Secretary of State's certified copy of the Certificate of Incorporation, authenticated on April 16, 2026 by the Executive Deputy Secretary of State.

**C. The Unrelated Singapore Entity – Cynapse Pte. Ltd. (formerly known as XRVision PTE. LTD.)**

A legally distinct entity, Cynapse Pte. Ltd. ("Cynapse"), was incorporated in Singapore on November 19, 2015, under UEN 201540994D. In 2016, Apelbaum licensed the "XRVision"

trademark to the Singapore company, which then operated under the name "XRVision Pte. Ltd." Apelbaum revoked that license in approximately 2018 after the Singapore company began violating its terms and acting unethically. The revocation forced the Singapore company to entirely rebrand, and the Singapore entity officially changed its corporate name to Cynapse Pte. Ltd. That name change appears on the face of the certified Business Profile and Corporate Compliance Profile issued by Singapore's corporate registration body. *See* Exhibit D.

Cynapse is a separate legal person from XRVision. Its current directors are Guy Ron, Elliott Bryan Broidy, Elie Srour, Paul Thomas Wilson, and Paul James Stephenson. Apelbaum holds no office, no directorship, and owns no shares in Cynapse. Its sole shareholder is Cynapse.AI Inc., a Delaware corporation unaffiliated with Plaintiffs. Apelbaum has had no business dealings with Cynapse for approximately seven years. Whatever the merits of the Khare-related investment narrative that Bloom wishes to pursue, that narrative concerns Cynapse and not Plaintiff XRVision. Neither Apelbaum nor XRVision have ever had any dealings with Rajat Khare.

**D. The Three Defamatory Publications.**

Consistent with footnote 1 of ECF 132, Plaintiffs will present evidence and argument only as to statements specifically identified as defamatory in the Amended Complaint. The statements are grouped by article.

**The First Article (January 29, 2024).** The First Article characterized Apelbaum as a present-tense "Israeli spy" who was "involved in shaping" the Hunter Biden laptop story and who used XRVision to target American commercial competitors on behalf of Israel. It tied Apelbaum to a conspiracy to "smear American facial recognition technology," to "human trafficking rackets," and to state-sponsored intellectual property theft. It also asserted that Apelbaum's conduct exemplifies how "the conservative movement has been penetrated by Israeli intelligence."

**The Second Article.** The Second Article repeated the "Israeli spy" characterization in the present tense, described Apelbaum as an "Israeli in the spyware business," and expressly reaffirmed the First Article after Bloom received the cease-and-desist letter.

**The Third Article.** The Third Article asserted that "the notorious Indian hacker Rajat Khare" had been "added" to the board of XRVision, and that Plaintiffs' conduct was "highly consistent" with Khare's operating methods. Those statements are false. Whatever facts Bloom attempts to establish about Khare's relationship to a Singapore entity have no bearing on Plaintiffs.

**E. Bloom's Deposition Admissions and Post-Deposition Communications.**

Bloom testified to the following under oath. First, he admitted he does not know whether Apelbaum is a spy. Bloom Dep. Tr. 98:16-19; 89:4-7; 93:12-13. Second, when pressed during deposition on the basis for the "spy" characterization, Bloom invoked Apelbaum's decades-old military service and offered speculation about motive rather than identifying any pre-publication factual basis. *See* Bloom Dep. Tr. 92:18-93:22. Third, he described his reference to Apelbaum as an "Israeli spy" as a "reasonable characterization," a framing that reveals advocacy rather than knowledge. *See* Exhibit B (Bloom Dep. Tr. 81:15-17; 89:6-7). Fourth, when pressed on why decades-old IDF service justifies a present-day spy accusation, Bloom conceded that Apelbaum is no longer an IDF intelligence officer, that Bloom did not know when Apelbaum's service ended, and that when he learned Apelbaum's service ended before Bloom was born, Bloom answered only "Okay." Bloom Dep. Tr. 80:20-81:6. Fifth, he admitted that he never asked Apelbaum about his company or background before publishing the First Article, and that he never sought a comment from Apelbaum on the story. Bloom Dep. Tr. 74:3-10. Sixth, he admitted that he never consulted any Secretary of State website to verify XRVision's corporate identity. Bloom Dep. Tr. 77:3-10. Seventh, he admitted that he "just assumed" the conflation between XRVision and the Singapore entity based on secondary publications and venture-capital databases rather than primary corporate

records. Bloom Dep. Tr. 78:1-6. Eighth, he admitted he conducted no pre-publication investigation. Ninth, he admitted he had no journalistic source. Tenth, he identified Charles Johnson as the supposed source of his information, although Johnson provided Bloom with information approximately two years after the First Article had already been published. Eleventh, he admitted he did not know Apelbaum was an American citizen. Bloom Dep. Tr. 127:2-5.

Bloom's post-deposition communications confirm that his commitment to the factual truth of the "Israeli spy" charge has not softened. In an April 6, 2026 email to counsel, Bloom wrote: "The characterization of your client as an Israeli spy is none of those things, there's no hiding the ball in that characterization, it's very direct and has been borne out by his admission in discovery. It's substantially true." Exhibit C. That written communication, months after discovery closed, forecloses any attempt by Bloom to recast the charge as opinion, hyperbole, or loose commentary.

## IV. Argument

### A. Plaintiffs Are Private Figures, and in Any Event the Record Establishes Actual Malice.

#### i. The Gertz Framework.

Public-figure status is a question of law. *See Hatfill v. New York Times Co.*, 488 F. Supp. 2d 522, 527 (E.D. Va. 2007), *aff'd*, 532 F.3d 312 (4th Cir. 2008). Under *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), and its Fourth Circuit progeny, a defamation plaintiff may be a public figure only if he has achieved such pervasive fame that he is a general-purpose public figure, or if he has voluntarily injected himself into a particular public controversy to affect its resolution and has thereby become a limited-purpose public figure as to that controversy. *See Foretich v. Capital Cities/ABC, Inc.*, 37 F.3d 1541, 1551-53 (4th Cir. 1994); *Hatfill v. N.Y. Times Co.*, 532 F.3d at 318-23 (4th Cir. 2008). Limited-purpose public figure status is issue-specific, not global. The

defamatory statement must "be germane to the plaintiff's participation in the controversy." *Waldbaum v. Fairchild Pubs., Inc.*, 627 F.2d 1287, 1298 (D.C. Cir. 1980).

**ii. Plaintiffs Are Not General-Purpose Public Figures.**

Apelbaum is a private cybersecurity professional. XRVision is a private New York corporation. Neither has achieved the pervasive fame that characterizes a general-purpose public figure. *See Gertz*, 418 U.S. at 351-52. Bloom does not contend otherwise.

**iii. Plaintiffs Are Not Limited-Purpose Public Figures on the Controversy in Which the Defamatory Statements Arose.**

Limited-purpose public figure status is issue-specific. The Supreme Court directed in *Gertz* that courts must "look[] to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." 418 U.S. at 352. The Fourth Circuit's five-factor test in *Foretich* includes: (1) the plaintiff had access to channels of effective communication; (2) the plaintiff voluntarily assumed a role of special prominence in the public controversy; (3) the plaintiff sought to influence the resolution or outcome of the controversy; (4) the controversy existed prior to the publication of the defamatory statement; and (5) the plaintiff retained public-figure status at the time of the alleged defamation. 37 F.3d at 1553. A plaintiff who voluntarily participates in one public controversy does not surrender private-figure protection as to unrelated defamatory statements. None of the *Foretich* factors apply, here, because Plaintiffs did not have access to channels of effective communication, Bloom cannot prove that they did, and even if they did, the only "controversies" relevant to Bloom's statements were those of his own creation.

Assuming, *arguendo*, Apelbaum's forensic authentication work in connection with the Hunter Biden laptop *may* have constituted voluntary participation in the narrow controversy of that laptop's provenance and authenticity, it still would not carry Bloom's argument. Bloom's defamatory statements are not statements about laptop authenticity. They are statements that

Apelbaum is a present-day Israeli spy, that XRVision engages in industrial espionage against American commercial interests, that Apelbaum participates in "human trafficking rackets," and that the "notorious hacker" Rajat Khare sits on XRVision's board. None of those statements is germane to forensic laptop work.

The Supreme Court's decision in *Wolston v. Reader's Digest Ass'n*, 443 U.S. 157 (1979), controls. Wolston had failed to appear before a grand jury investigating Soviet espionage in the 1950s, and his contempt conviction drew contemporaneous press coverage. *Id.* at 159-63. Years later, a book falsely identified him as a Soviet agent indicted for espionage. *Id.* The Supreme Court rejected the argument that Wolston was a limited-purpose public figure as to the espionage accusation. *Id.* at 166-68. As the Court explained, Wolston "never discussed this matter with the press and limited his involvement to that necessary to defend himself against the contempt charge." *Id.* at 167. The Fourth Circuit has treated *Wolston* as controlling authority for the principle that exposure to media attention in a related matter does not make a plaintiff a public figure as to later espionage accusations. *See Foretich,* 37 F.3d at 1556-57.

The controversy in which Bloom's spy and espionage statements arose — the controversy of whether Apelbaum is an Israeli spy — did not exist before Bloom manufactured it. The Supreme Court has held that a defendant cannot create a public figure through his own defamation. "Clearly, those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure." *Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979); *see also Wolston*, 443 U.S. at 167-68. Bloom's own Trial Brief exposes his bootstrapping. He concedes that Apelbaum "did not stumble accidentally into the public eye" only because his own "statements were published on Defendant's Substack and also to thousands of viewers on Twitter and other platforms, then were 'subsequently and virally' republished on other websites" Exhibit A at 7-8. That concession is fatal.

**iv. The Record Establishes Actual Malice.**

Even were Plaintiffs limited-purpose public figures, there was actual malice. Actual malice means knowledge of falsity or reckless disregard of whether a statement was false. *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Reckless disregard is established where the defendant "entertained serious doubts as to the truth of his publication" or engaged in purposeful avoidance of the truth. *St. Amant*, 390 U.S. at 731; *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 692 (1989). The Supreme Court was explicit in *Harte-Hanks* that "[a]lthough failure to investigate will not alone support a finding of actual malice, the purposeful avoidance of the truth is in a different category." *Id*.

Actual malice may be proven through cumulation of circumstantial evidence. The Supreme Court has recognized that actual malice may be established through the cumulative weight of circumstantial subsidiary facts and that a court must review the record "in its entirety" in evaluating whether that standard is met. *Id.* at 690, 693. The cumulation theory is well-settled in Virginia-law defamation cases. "Although failure to adequately investigate, a departure from journalistic standards, or ill will or intent to injure will not singularly provide evidence of actual malice, the court believes that proof of all three is sufficient to create a genuine issue of material fact." *Eramo v. Rolling Stone, LLC*, 209 F. Supp. 3d 862, 872 (W.D. Va. 2016). The Eastern District of Virginia has adopted this formulation, expressly recognizing that "[f]ederal cases applying Virginia law recognize the cumulation theory to prove actual malice." *Fairfax v. CBS Broad. Inc.*, 534 F. Supp. 3d 581, 595 n.9 (E.D. Va. 2020) (quoting *Eramo*); *see also Reuber v. Food Chem. News, Inc.*, 925 F.2d 703, 712 (4th Cir. 1991) (en banc).

Bloom's own admissions and conduct supply both the subjective awareness required by the purposeful avoidance identified in *Harte-Hanks*. First, his sworn admission that he does not know whether Apelbaum is a spy (Bloom Dep. Tr. 98:16-19; 89:4-7; 93:12-13) is the very

subjective uncertainty *St. Amant* identifies as the heart of reckless disregard. Second, his characterization of "Israeli spy" as a "reasonable characterization" (*see* Exhibit B, Bloom Dep. Tr. 81:15-17; 89:6-7) confirms advocacy rather than knowledge. Third, he had no pre-publication source; the associate he later identified, Charles Johnson, supplied information *two years after* the First Article was in print. Bloom has admitted in blog posts that the information was incorrect.

Fourth, he conducted no pre-publication investigation despite the availability of publicly accessible corporate registries, such as the N.Y. Department of State and Singapore's corporate registry, that would have revealed the separateness of XRVision and the Singapore *Cynapse* entity. Exhibits D & E. Bloom admitted at deposition that he never consulted any Secretary of State website. Bloom Dep. Tr. 77:3-10. He further admitted that he "just assumed" the Singapore conflation was true based on secondary publications rather than primary corporate records. Bloom Dep. Tr. 78:1-6. That is textbook purposeful avoidance of the truth. *Harte-Hanks*, 491 U.S. at 692.

Fifth, and compounding the above, Bloom had Apelbaum's contact information before he published the First Article. Bloom acknowledged in the First Article itself that he and Apelbaum had previously communicated, but that he had not contacted him about his article regarding Plaintiffs. *See* Exhibit B (Bloom Dep. Tr. 74:3-10). Bloom nonetheless published grave accusations deliberately and without seeking Apelbaum's response. *Id*. The *Harte-Hanks* Court treated the newspaper's failure to interview the one witness who could verify or refute the central accusation as particularly probative of actual malice, concluding that the totality of circumstances demonstrated "a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of the defamatory allegations. 491 U.S. at 692. The parallel here is direct. Apelbaum was the one person in the world who could verify or refute the charge that he is an Israeli spy. Bloom had already been in communication with him. Bloom had his contact information. Bloom nonetheless published grave accusations without seeking Apelbaum's

response. A publisher who declines the most elementary act of responsible journalism — asking the subject of a serious accusation for a response before publishing — when the subject is known and reachable engages in exactly the "deliberate decision not to acquire knowledge" that *Harte-Hanks* identifies as actual malice.

Bloom's foreseeable reliance on *Horne v. WTVR, LLC*, 893 F.3d 201 (4th Cir. 2018), and *Cannon v. Peck*, 36 F.4th 547 (4th Cir. 2022), does not rescue him. In *Horne*, the Fourth Circuit found no actual malice because the defendant reporter had worked with his informant "on dozens of stories over several years" and had no reason to doubt his veracity. 893 F.3d at 211. In *Cannon*, the court affirmed a judgment for the defendant because the record established neither obvious reasons to doubt nor purposeful avoidance; the court expressly contrasted negligent investigation, which is insufficient, with the actual malice standard. 36 F.4th at 568, 572. Both cases reaffirm that recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. *Horne*, 893 F.3d at 211, 213; *Cannon*, 36 F.4th at 571 (both quoting *St. Amant*, 390 U.S. at 732). Further, *Cannon* itself recognizes a principle that defeats Bloom's likely defense. Bloom had no pre-publication source at all. He had no source relationship capable of giving rise to *Horne*-style reliance. He had the opposite. He had a subject he had already contacted but now deliberately avoided. He had a publicly accessible corporate registry he refused to consult. He had no journalistic process to vouch for an accusation he admits he did not know to be true. And yet, months after discovery closed, he reaffirmed in writing that the espionage charge remains "substantially true." These are concrete factual admissions that, taken together, satisfy the *Harte-Hanks* standard: a "deliberate decision not to acquire knowledge of facts that might confirm the probable falsity" of his accusations. 491 U.S. at 692.

Sixth, Bloom's argument that discovery later produced information he considers corroborating is legally barred. Actual malice is measured at the time of publication, not later. The

Supreme Court's actual-malice doctrine focuses unambiguously on the defendant's subjective state of mind when he published the defamation. *Harte-Hanks*, 491 U.S. at 667-68. The investigative diligence Bloom **did not** perform before he published cannot be supplied retroactively by the litigation that his publications made necessary.

Seventh, the record establishes that Bloom conceived the "Israeli spy" narrative before he conducted any investigation and that he has maintained the narrative ever since, across each successive stage at which reality might have displaced it. The Western District of Virginia has held that "evidence that a defendant conceived a story line in advance of an investigation and then consciously set out to make the evidence conform to the preconceived story is evidence of actual malice." *Eramo*, 209 F. Supp. 3d at 872 (quoting *Harris v. City of Seattle*, 152 Fed. Appx. 565, 568 (9th Cir. 2005)). The *Eramo* court held that a combination of inadequate investigation, departure from journalistic standards, and ill will or intent to injure is sufficient to create a genuine issue of actual malice. 209 F. Supp. 3d at 872. The Western District of Virginia applied the same framework in *Gilmore v. Jones*, 370 F. Supp. 3d 630, 673 (W.D. Va. 2019), where the court relied on the defendant's prior publications advancing the same narrative as evidence that the defendant "conceived a storyline about the event" and then set out to make the evidence conform. That fact pattern is Bloom's fact pattern. Bloom has a documented body of prior publications advancing the same preconceived ideological thesis — that the "conservative movement has been penetrated by Israeli intelligence" — into which he shoehorned Apelbaum without particularized evidence. Under *Eramo* and *Gilmore*, Bloom's prior publications advancing the same narrative are themselves circumstantial evidence that the "Israeli spy" charge against Apelbaum was the product of a preconceived storyline rather than the product of investigation.

Bloom admitted that he does not know whether Apelbaum is a spy but described the charge as a "reasonable characterization." *See* Exhibit B (Bloom Dep. Tr. 81:15-17; 89:6-7). This is the

language of an advocate for a thesis, not a reporter conveying a finding. When pressed on the basis for the charge, Bloom retreated. Asked whether Apelbaum is spying on behalf of the Israeli government, Bloom admitted he "can't say for certain" whether Apelbaum was "specifically tasked" by any foreign government and defended his published accusation instead as "within the bounds of reasonable characterization." Bloom Dep. Tr. 89:4-7, 91:14-21. That is the voice of an advocate defending a preconceived thesis, not a reporter conveying a verified fact. And on April 6, 2026, months after the close of discovery had failed to yield a single document supporting the charge, Bloom wrote to undersigned counsel that the "Israeli spy" characterization is "very direct" and "substantially true." Exhibit C. The April 6 email is not itself the basis for actual malice, which is measured at publication. It is admissible circumstantial evidence of Bloom's state of mind in publishing: a state of mind that began with a preconceived narrative, that bent each subsequent input to conform to that narrative, and that has never adjusted despite no evidentiary support. That is the *Eramo* and *Gilmore* pattern. It also defeats any effort by Bloom to claim that the statements were opinion, hyperbole, or loose rhetoric that a speaker might later disclaim.

Eighth, the "Israeli spy" charge is inherently improbable on the disclosed facts. The Supreme Court in *St. Amant* identified three non-exhaustive categories of reckless disregard, one of which is publication of allegations "so inherently improbable that only a reckless man would have put them in circulation." 390 U.S. at 732. Bloom's "Israeli spy" accusation against Apelbaum rests on two disclosed facts: Apelbaum's seven years of IDF service in the mid-1980s, and a newspaper article about a legally distinct foreign corporation.

**B. Defamation by Implication and the Substantial-Truth Defense.**

Bloom's Trial Brief invokes the substantial-truth doctrine to argue that Apelbaum's seven years of IDF service in the mid-1980s renders his statement that Apelbaum is a current "Israeli spy" substantially true (ECF 134 at 3-4). The argument fails at every level.

First, Bloom's statements are present-tense. He wrote in 2024 that Apelbaum is an Israeli spy. He doubled and tripled down on that present-tense characterization across the three articles at issue, and he reaffirmed it again in his April 6, 2026 written communication to counsel. Exhibit C. The substantial-truth doctrine requires that the gist of the challenged statement be true. *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991). The gist of Bloom's accusation is that Apelbaum is presently an Israeli spy engaged in active espionage and industrial sabotage and theft, not to mention human trafficking and other bizarre accusations. That gist is not satisfied by forty-year-old combat intelligence service in a paratrooper unit.

Second, "spy" has a specific meaning in American English. A spy is a person who engages in covert intelligence activity on behalf of a foreign power, typically against the host country, often involving the clandestine collection of secrets. A combat intelligence officer who served publicly in his country of origin's armed forces decades ago *is not a spy*. Apelbaum's service was disclosed, governmental, and unrelated to any activity directed against American interests. And several years of his service was in a Reserve unit. Bloom's attempt to equate disclosed foreign military service of a naturalized American citizen with covert foreign espionage flattens a crucial distinction that no reasonable reader would conflate.

Third, the substantial-truth doctrine examines whether the statement leaves a false impression materially different from truth. Bloom's statements leave precisely that false impression. A reader of Bloom's articles would understand that Apelbaum is currently engaged in covert espionage against American interests on behalf of Israel. That is materially different from the truth that Apelbaum served as a combat intelligence officer in his originating country's defense forces forty years ago and has since built a private American cybersecurity career.

Fourth, Bloom's April 6, 2026 email forecloses any attempt to recast the charge as rhetorical shorthand rather than factual assertion. Bloom wrote: "The characterization of your

client as an Israeli spy is none of those things, there's no hiding the ball in that characterization, it's very direct." Exhibit C. A speaker who describes his own accusation as "very direct" has committed to its factual character and surrendered any claim that it was mere loose rhetoric. *See Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 2 (1990) (rhetorical-hyperbole doctrine protects only statements that "cannot reasonably be interpreted as stating actual facts").

Fifth, to the extent Bloom's statements are framed as implication rather than direct assertion, Virginia recognizes defamation by implication. *Pendleton v. Newsome*, 290 Va. 162, 171-72, 772 S.E.2d 759, 763 (2015). A defendant may not escape liability by artful construction that conveys a defamatory meaning while nominally declining to assert it. The three articles, read as a whole, communicate unmistakably that Apelbaum is a present-day spy and that XRVision is a present-day espionage instrumentality. Those implications are false.

**C. The Third Article's Statements Are Defamatory Per Se.**

**i. Virginia Law on Defamation Per Se.**

Virginia recognizes four categories of defamation per se, two of which are relevant here: statements imputing to the plaintiff a criminal offense involving moral turpitude, and statements prejudicing the plaintiff in his profession or trade. *Tronfeld v. Nationwide Mut. Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 449-50 (2006). Defamation *per se* requires no proof of special damages; damages are presumed. *Id.* at 713-14, 636 S.E.2d at 450.

**ii. Bloom Has Conceded the Defamatory Per Se Character of the Third Article.**

Bloom's Trial Brief contains a critical admission. Exhibit A. At pages 12 through 13, Bloom concedes that the Khare statements "could imply involvement in, facilitation of, or knowing receipt of proceeds from criminal computer fraud and unauthorized access to protected systems" in violation of "the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and its Virginia analogue,

Va. Code § 18.2-152.4." *Id*. at 12. He further concedes that the statements prejudice Plaintiffs in the cybersecurity trade. *Id*., at 11-12. These are admissions of the defamatory *per se* character of the Third Article's statements on both Virginia *per se* prongs. No further analysis of per se status is required. Bloom's sole residual defense, as he concedes, is truth.

**iii. The Third Article's Statements Are False as to XRVision.**

Bloom's Trial Brief at pages 12 through 13 concedes the controlling point: "if discovery or trial reveals any business connection between XRVision and Boundary Holdings or Khare . . . the claim fails entirely on truth grounds, regardless of *per se* status." *Id*. at 12-13. The inverse is equally true. If the record establishes no business connection between XRVision and Khare or Boundary Holdings, Bloom's truth defense fails and liability attaches.

The record establishes no such connection. Khare, through Boundary Holdings, invested (if at all) in Cynapse Pte. Ltd., the separately incorporated Singapore entity that rebranded from "XRVision Pte. Ltd." in May 2022. XRVision is a New York corporation of wholly separate legal and actual existence. Its directors, officers, and shareholders are not shared with Cynapse. Neither Apelbaum nor XRVision has ever had any business dealings with Khare. The certified Certificate of Incorporation from the New York Department of State, and the certified corporate records from Singapore establish the corporate separateness. Those documents are self-authenticating public records. *See* Fed. R. Evid. 902(3)-(4).

Bloom's proffered exhibits on this point, comprised of a Crunchbase printout, a Boundary Holdings website advertisement, and a Reuters article quoting Aviram Halevi, all address the Singapore entity, not Plaintiff. They therefore cannot establish truth as to XRVision. The *per se* claim stands, and the substantial truth defense fails.

### D. The Virginia Anti-SLAPP Statute Does Not Bar This Action.

#### i. Bloom Has Waived the Anti-SLAPP Defense as a Trial Issue.

Bloom withdrew his proposed anti-SLAPP jury instruction during the jury-instruction process. *See* ECF 129 at 1. A party that deliberately withdraws a proposed jury instruction abandons the theory it embodies as a trial issue. "Waiver is the 'intentional relinquishment or abandonment of a known right.'" *Wood v. Milyard*, 566 U.S. 463, 474 (2012) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). Bloom cannot re-raise at trial the theory he intentionally removed from the jury instructions.

#### ii. Bloom's Statements Were Not Made in Good Faith and Do Not Concern a Matter of Public Concern.

Virginia's anti-SLAPP statute protects statements made "at a public hearing" or "regarding matters of public concern that would be protected under the First Amendment." Va. Code § 8.01-223.2(A). Bloom's statements fail this threshold on two grounds. First, a controversy manufactured by a defendant's own defamatory publication is not a "matter of public concern" in the statutory sense. A rule permitting defendants to create public-concern status by the very act of defaming a private person would read the falsity exception out of the statute. The *Hutchinson v. Proxmire* anti-bootstrapping principle, 443 U.S. at 135, forecloses this circularity. Second, the statute's protections do not extend to statements made with "knowledge that [they are] false" or with "reckless disregard for whether [they are] false." Va. Code § 8.01-223.2(A). For the reasons set forth in Section IV.A.iv, the record establishes both. Third, whether or not Plaintiffs are spies for foreign governments is not a matter of public concern or, if it is, only if it is true.

**E. Plaintiffs' Proof of Falsity on Each Defamatory Statement.**

The Court directed Plaintiffs to address how they intend to prove the falsity of each statement in question. ECF 132 at 1. Plaintiffs address that directive by theme, grouping statements across the three articles so that common evidence is not duplicated.

**i. Proof That Apelbaum Is Not a Present-Day Israeli Spy.**

The defamatory theme across all three articles is that Apelbaum is a present-day Israeli spy. Plaintiffs will prove falsity through the following evidence. First, Apelbaum will testify that he is an American citizen; that he concluded his IDF service in the mid-1980s as a combat intelligence officer in a paratrooper unit, a portion in the reserves; that he has held no intelligence role, governmental or private, since that service ended; and that he is not a spy, has never been a spy in any American-English sense of that word, and has no covert relationship with any foreign intelligence service.

Second, Plaintiffs will introduce Bloom's sworn admission that he does not know whether Apelbaum is a spy (Bloom Dep. Tr. 98:16-19; 89:4-7; 93:12-13) and his characterization of the accusation as a "reasonable characterization." *See* Exhibit B (Bloom Dep. Tr. 81:15-17; 89:6-7).

Third, Plaintiffs will show the absence of any admissible evidence in Bloom's production supporting the spy accusation.

Bloom's substantial-truth argument that disclosed foreign military service decades ago renders "spy" substantially true fails as a matter of law. *Masson*, 501 U.S. at 517.

**ii. Proof That XRVision Is Not Engaged in Espionage, Sabotage, or Intellectual-Property Theft.**

The First Article ties XRVision to a conspiracy to "smear American facial recognition technology," to "human trafficking rackets," and to intellectual property theft. Plaintiffs will prove falsity through Apelbaum's testimony describing XRVision's legitimate business activities, and

through the absence in Bloom's production of any evidence supporting these allegations. Bloom's Trial Brief does not attempt to defend these specific statements. They are manifestly false.

**iii. Proof That Apelbaum Was Not Employed by Mati Kochavi or by an "Intelligence Front."**

Bloom's Trial Brief (Exhibit A) asserts at page 3 that Apelbaum "admitted" Kochavi was his former employer and that Apelbaum is aware Kochavi is considered an intelligence front. That characterization misstates Apelbaum's discovery responses. Apelbaum was never employed by Kochavi. Plaintiffs will prove this through Apelbaum's testimony and through the absence in Bloom's production of any evidence that any Apelbaum employer was an intelligence front.

**iv. Proof That Khare Is Not on the Board of XRVision.**

The Third Article asserts that Khare was added to the board of XRVision. Plaintiffs will prove this false through: (1) Apelbaum's sworn testimony that neither he nor XRVision has ever had any dealings with Khare; (2) the certified Certificate of Incorporation of XRVision from the New York Department of State (File No. 160308010293), establishing Plaintiff's independent New York legal identity since March 8, 2016; (3) the absence of any record showing Khare on Plaintiff's board; and (4) the certified Singapore records establishing that Bloom has been conflating Plaintiff XRVision with Cynapse Pte. Ltd., a separately incorporated Singapore entity that has no common officers, directors, or shareholders with XRVision.

**v. Proof That Plaintiffs Are Not "Highly Consistent" with Khare's Operating Methods.**

The Third Article asserts that Plaintiffs' conduct is "highly consistent with the operating methods" of Khare. Plaintiffs will prove this false through the same corporate-separateness evidence identified above and through the absence of any record that Plaintiffs engaged in any conduct remotely resembling the hacking-for-hire enterprise attributed to Khare's firm Appin. Bloom has no such evidence.

### vi. Documentary Falsity Showing — Certified Public Records.

In addition to testimony, Plaintiffs will introduce the following certified public records: (1) the New York Secretary of State's certified copy of the Certificate of Incorporation of XRVision, Ltd. (File No. 160308010293), authenticated April 16, 2026; (2) Singapore corporate records of Cynapse Pte. Ltd. (UEN 201540994D). Those documents are self-authenticating under Federal Rules of Evidence 902(3) and 902(4) and establish beyond reasonable dispute the corporate separateness on which much of the falsity showing depends.

## VI. Conclusion

Plaintiffs stand ready for trial on April 27, 2026.

Dated: April 19, 2026

Respectfully submitted,

/s/ Timothy B. Hyland

Timothy B. Hyland (VSB No. 31163)
Counsel for Yaacov Apelbaum and XRVision, Ltd.
Hyland Law PLLC
11710 Plaza America Drive, Suite 160
Reston, VA 20190-4756
(703) 552-4733 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com

John C. Burns (pro hac vice)
Burns Law Firm
P.O. Box 191250
St. Louis, MO 63119
P: (314) 329-5040
TBLF@pm.me
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2026, I filed the foregoing with the Clerk of Court using the CM/ECF system, which in turn will send a copy of the foregoing and the Notice of Electronic Filing by email to the following:

Jordan Arthur Bloom
3315 North Brandywine Street
Arlington, VA 22207

/s/ Timothy B. Hyland
Timothy B. Hyland (VSB No. 31163)
Counsel for Yaacov Apelbaum and
XRVision, Ltd.
Hyland Law PLLC
11710 Plaza America Drive, Suite 160
Reston, VA 20190-4756
(703) 552-4733 (Tel.)
(703) 935-0349 (Fax)
thyland@hylandpllc.com