FILED

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Yaacov Apelbaum and XRVision, Ltd | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil Action no. 1:25cv147 |
| | ) | |
| Jordan Arthur Bloom | ) | |
| *Defendant, pro se* | ) | |
| | ) | |

**Defendant's Trial Brief**

**Introduction**

This case concerns the allegedly defamatory statement that Plaintiff Apelbaum "is an Israeli spy," which Defendant published. Defendant does not contest that he published the allegedly offending statement, but contends it is substantially true to characterize the Plaintiff as an Israeli spy. Plaintiff Apelbaum has admitted he was an intelligence officer in the IDF for seven years.

The substantial truth doctrine holds that a defendant cannot be liable for defamation if the gist of a statement is true even if it is false in minor particulars. The question here is whether Plaintiffs' admission that he was an IDF intelligence officer renders the initially published statement that Plaintiff is an Israeli spy substantially true. It does, and therefore Defendant cannot be held liable. Moreover, additional support for Defendant's characterization in print can be provided, far beyond what the substantial truth doctrine requires.

## Statement of Facts

The article containing the allegedly false statement that IDF intelligence officer Yaacov Apelbaum is an Israeli spy, was published on January 29, 2024 on Defendant's blog, Arthuriana. Defendant published it in the midst of substantial litigation surrounding the Hunter Biden matter because he had personal knowledge to substantiate the claims made by Hunter Biden's attorneys, that different versions of his hard drive were going around.

Defendant has personal knowledge because Mr. Apelbaum possessed files relating to Hunter Biden that Defendant did not have in the version he obtained—he was in a position to see differences between versions, which very few people were able to do. This is a matter of substantial public controversy.

The allegedly defamatory article by the Defendant contains an excerpt from another article in the Arizona Republic, which states Plaintiff Apelbaum has "been accused of being a spy," and "has ties to foreign intelligence agencies." It also states, "Some of Apelbaum's close business associates have ties to foreign intelligence and military agencies, including the Israeli Defense Forces." Plaintiff Apelbaum has admitted during discovery he was an intelligence officer in the Israel Defense Forces.

Defendant forthrightly called Plaintiff Apelbaum an Israeli spy, which is barely a hop, skip and a jump away from what the Plaintiff declined to sue Gannett over. Defendant's characterization has been substantiated beyond the article in the Arizona Republic, with Plaintiff Apelbaum's admission that he was an intelligence officer in the 39th paratrooper battalion of the IDF, and with slides from Plaintiff XRVision showing they have advertised one of their

customers for this analytics software is the Israeli Prime Minister's Office. Defendant's claim is stronger, because he has stronger evidence.

Plaintiff Apelbaum has further admitted he is aware that many consider his former employer, Mati Kochavi, an Israeli intelligence front, and the two of them are assigned patents together. Most of his companies generate signals intelligence data.

There are two more subjective analytical questions which Defendant contends support the allegedly defamatory characterization as well. Plaintiff Apelbaum's involvement in the Hunter Biden matter, opining the files are authentic by means of a process nobody has ever seen, arguably benefitted the Israeli government, lending his expertise to support an outcome in a presidential election for the side more congenial to Israeli foreign policy goals. The Plaintiff mitigated the libel risk to the Murdoch properties through this supposed authentication, and therefore helped a damaging story spread.

The second subjective question that supports the characterization is Plaintiffs' behavior in the course of this suit, seeking inappropriate discovery into an FBI confidential human source who was informing on Jeffrey Epstein. To seek out a protected person's information, who was working with federal law enforcement on an investigative target connected to Israel, raises a lot of questions.

## Argument

### The Substantial Truth Standard is Met

The substantial truth standard is more than met here, and substantial truth is a complete defense. Plaintiff's admission that he was an IDF intelligence officer is not sufficiently different in substance from saying he is an Israeli spy for the statement to be false and defamatory. This

admission alone completely satisfies the substantial truth standard. A reasonable layperson would hear intelligence officer and think that's the same thing as being a spy. It is routine for former intelligence officers to be referred to as spies in print. Therefore no false impression is created. The substantial truth standard provides for instances in which the gist, or sting of statements is true but minor falsehoods persist, but the latter is not even present here.

It seems to be Plaintiffs' contention, based on the fact that they have not sued the *Arizona Republic* for stating Mr. Apelbaum has ties to foreign intelligence agencies and has been accused of being a spy, that Defendant has defamed him by moving beyond the realm of implication and stating, directly, that Plaintiff Apelbaum is a spy. Defendant's contention is that he has added new information to that which was stated in the Arizona Republic, and the characterization is substantially true. Plaintiffs still cannot explain what the difference is between their admission that Mr. Apelbaum was an IDF intelligence officer, and Defendant's allegedly defamatory statement that he is an Israeli spy.

**Plaintiffs Are At Least Limited-Purpose Public Figures With Respect to the Hunter Biden Matter**

As a threshold matter, the actual malice standard clearly applies to Apelbaum and XRVision. Under *Gertz* v. *Robert Welch, Inc.*, 418 U.S. 323 (1974), a plaintiff is a limited-purpose public figure when he voluntarily injects himself into a particular public controversy. Apelbaum and XRVision did precisely that. They actively participated in the examination of Hunter Biden's laptop — one of the most publicly contested and politically charged stories of the 2020 election cycle — provided sourcing to multiple conservative publications including the Washington Times, and cultivated relationships with prominent political figures. Apelbaum

appeared to have had contact with these figures and a fairly close relationship with the Gateway Pundit. Having voluntarily entered the arena of a national political controversy involving foreign influence, election integrity, and intelligence operations, Apelbaum cannot now claim the insulation of a purely private figure. He must satisfy the actual malice standard.

**The Actual Malice Standard Isn't Met**

There is neither knowledge of falsity nor subjective awareness of probable falsity on the part of the Defendant. Defendant's subjective belief in the written characterization is genuine, with an objectively reasonable basis. Far from publishing "with knowledge of falsity," Bloom's characterization of Apelbaum as an "Israeli spy" was grounded in a substantial body of factual predicates that, in their totality, provided a reasonable evidentiary basis for the statement expressed.

*A. Apelbaum's Own Admissions and Background.*

Apelbaum acknowledged contracting with government intelligence and defense agencies, and when asked about his background, stated "I used to operate in that world," declining to elaborate further. This is a man who, by his own words, had operated in the world of intelligence contracting. Discovery has since revealed even more: Apelbaum has admitted to being a veteran IDF intelligence officer of seven years — far exceeding the mandatory service term. He was not a conscript; he was a career intelligence professional. That a person who spent seven years as an IDF intelligence officer could be characterized as connected to Israeli intelligence is not a reckless falsehood — it is a reasonable inference from established fact.

*B. Business Associations and Intelligence Ties.*

Some of Apelbaum's close business associates have ties to foreign intelligence and

military agencies, including the Israeli Defense Forces. Moreover, XRVision appears to have done business with the Israeli Prime Minister's office, and the company had relationships with entities that raised legitimate national security questions. These are not invented or reckless claims — they are documented business realities.

*C. The "Spy" Characterization Was a Supportable Opinion.*

The term "spy" in American political discourse has long been used to describe persons who carry out intelligence activities on behalf of a foreign government, whether through formal employment, contracting, or influence operations. Bloom's article made plain his reasoning: he believed Apelbaum was advancing Israeli intelligence interests through his role in shaping American political narratives around Hunter Biden's laptop. As Bloom articulated, when one combines service as an intelligence officer, work for and with alleged Israeli intelligence assets, and present public writing in favor of lawfare on behalf of Israel, one is on fairly solid ground describing that person as an Israeli spy. This is not subjective blindness to falsity — this is reasoned journalistic inference from disclosed facts.

**Virginia's Anti-SLAPP Statute Bars This Action**

*A. The Statutory Framework*

Virginia Code § 8.01-223.2 — the Commonwealth's anti-SLAPP statute — is designed to deter frivolous lawsuits brought for the improper purpose of harassing individuals who exercise their protected right to freedom of speech. The statute immunizes against defamation liability statements made in good faith on matters of public concern — that is, matters relating to any matter of political, social, or other legitimate concern to the community. As relevant here, the statute creates immunity from tort liability for statements made to third parties regarding

"matters of public concern that would be protected under the First Amendment." A defendant who successfully invokes this immunity may be entitled to reimbursement of attorney's fees and costs.

*B. Bloom's Statements Were Made on a Quintessential Matter of Public Concern*

The threshold inquiry under § 8.01-223.2 is whether the challenged statements addressed a "matter of public concern." Under the Supreme Court's framework in *Snyder* v. *Phelps*, 562 U.S. 443, 453 (2011), speech deals with a matter of public concern when it "can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest — that is, a subject of general interest and of value and concern to the public."

Bloom's articles easily satisfy this standard. They addressed the role of a private intelligence contractor in authenticating and disseminating materials from Hunter Biden's laptop — one of the most politically consequential and publicly debated stories of the 2020 election cycle. They raised questions about the penetration of American conservative political networks by foreign intelligence services, and about the influence of Israeli intelligence assets on domestic political narratives. These are not private grievances or matters of narrow commercial dispute. They go to the heart of questions about foreign influence operations, election integrity, and national security — subjects of intense and legitimate public concern.

The Supreme Court has been clear that commentary on the conduct of persons who thrust themselves into public political controversies falls squarely within the domain of protected speech on matters of public concern. Apelbaum and XRVision did not stumble accidentally into the public eye. These statements were published on Defendant's Substack and also to thousands

of viewers on Twitter and other platforms, then were "subsequently and virally" republished on other websites Reason.com — reflecting precisely the kind of public discourse on matters of general community concern that § 8.01-223.2 was enacted to protect.

*C. The Falsity Exception Does Not Apply*

The immunity under § 8.01-223.2 is not absolute. The law does not provide protection for statements made with knowledge of, or reckless disregard for, whether they are false. But as argued at length above, Plaintiffs cannot establish that Bloom made his statements with actual malice. He had a substantial, documented evidentiary basis for his characterization of Apelbaum — including Apelbaum's own admissions of intelligence ties, his seven-year career as an IDF intelligence officer, XRVision's business relationships with Israeli intelligence-connected entities, and the company's documented dealings with the Israeli Prime Minister's office. Bloom genuinely and consistently believed his account, stood by it after receiving a cease-and-desist letter, and reaffirmed it in a second publication. Where, as here, there is no clear and convincing evidence of subjective awareness of probable falsity, the statutory exception does not strip away the immunity the legislature conferred.

*C. The Procedural Posture and the Fee-Shifting Remedy*

Virginia's anti-SLAPP statute has a significant limitation that is important to acknowledge candidly: unlike most anti-SLAPP laws, the Virginia law fails to identify any special procedures allowing a defendant to invoke these protections at an early stage of the proceedings, and the law does not specify whether a stay of discovery is available. This procedural gap helps explain why the case has progressed as far as it has — the statute does not provide the kind of robust early dismissal mechanism available in states like California. Bloom was therefore unable to terminate

this action at the outset on anti-SLAPP grounds through an expedited special motion, and has instead been subjected to precisely the kind of protracted, costly litigation the statute was designed to prevent.

Nevertheless, the statute's fee-shifting provision remains operative throughout the life of the action. The 2023 amendments make clear that attorney fees and costs may be awarded to any person who "prevails in a legal action" as a result of anti-SLAPP immunity — not merely upon early dismissal. Accordingly, if Bloom prevails at trial, he is entitled to seek an award of reasonable attorney's fees and costs under § 8.01-223.2(B). Given that this lawsuit has all the hallmarks of a SLAPP — brought against a journalist for commentary on a public controversy, seeking no named amount in damages and filed on what Bloom has characterized as the last day before the statute of limitations expired Cannabis Culture — a fee award would be entirely appropriate. The anti-SLAPP statute exists for exactly this situation.

**Amended Complaint: Whether Statement Alleging Rajat Khare's Involvement with XRVision is Defamatory *Per Se***

*A. The Specific Statement at Issue*

With his amended complaint, Plaintiffs argue that Bloom defamed them by associating Apelbaum with notorious Indian hacker Rajat Khare. The specific falsehood alleged is that Bloom stated Khare is an investor in XRVision — which is what Khare himself claims — and, pursuant to other reporting, a board member. Apelbaum denies this, and has stated, in filings to the court and under oath, that neither he nor his company have had "any business dealings" with Khare, and that they "don't know Khare and have never had any dealings with him."

The threshold defamation *per se* question, therefore, is not whether Bloom's statement was false (that is a merits question), but whether the content of the statement — that XRVision is backed by or associated with Rajat Khare — is the type of statement that is injurious on its face, without the need for any extrinsic proof of harm. Under Virginia law, a statement is defamatory *per se* if it, among other categories, prejudices a person or entity in their profession or trade, or imputes to them conduct constituting a criminal offense. The Khare statement satisfies both prongs.

*B. Who Is Rajat Khare, and Why Does the Association Matter?*

Rajat Khare is a figure of significant and documented notoriety in the global cybersecurity and intelligence community. He is the co-founder of Appin, an Indian firm that became the subject of one of the most significant global investigative journalism efforts in recent memory. According to investigative reports by Reuters, Appin was a "hack-for-hire powerhouse that stole secrets from executives, politicians, military officials and wealthy elites around the globe." The firm's activities drew criminal investigations across multiple jurisdictions: since 2012, Appin and its co-founder Rajat Khare have been the subject of criminal investigations in multiple countries.

The reputational weight of any association with Khare is severe and well-established. Reuters published a special investigation under the headline "How an Indian startup hacked the world," detailing how Appin allegedly became a "hack for hire powerhouse that stole secrets from executives, politicians, military officials and wealthy elites around the globe." Khare's global suppression campaign — deploying law firms across multiple countries to force removal of reporting — has itself become a press freedom cause célèbre. At least 15 media outlets

worldwide received legal notices, and five have been subjected to formal legal proceedings, in what Reporters Without Borders described as an "unprecedented" global scale of litigation to suppress investigation of Khare and Appin.

The point is not that Khare has been convicted of anything — he has not, and he vigorously denies wrongdoing. The point is that the mere factual association with Khare, in the cybersecurity industry and in the context of contracts with U.S. government agencies, carries devastating reputational implications that any reasonable reader of these publications would immediately recognize.

*C. The Statement Is Defamatory Per Se on Two Independent Grounds*

**i. It Prejudices Plaintiffs in Their Profession and Trade.**

Apelbaum and XRVision operate in the cybersecurity industry and, by their own account, periodically contract with the U.S. government. Identifying XRVision as an entity backed by the co-founder of a firm globally reported to be a hack-for-hire criminal enterprise — one that allegedly stole secrets from "executives, politicians, military officials and wealthy elites around the globe" — is precisely the kind of statement that prejudices a cybersecurity professional and his firm in their trade, without requiring any proof of special damages. A company bidding for U.S. government cybersecurity contracts, seeking corporate clients, or trying to maintain existing relationships, would face immediate and obvious commercial harm from any credible association with Appin and Khare. The court already recognized, in sustaining the original complaint, that "allegations of close ties to a foreign intelligence agency could prejudice a cybersecurity professional and his firm." The Khare association is far more operationally damaging than a

generic "Israeli spy" charge — it connects XRVision to a specific, named, globally-reported criminal enterprise.

**ii. It Could Impute Criminally Indictable Conduct.**

A statement is defamatory *per se* under Virginia law when it imputes conduct constituting a criminal offense involving moral turpitude. Associating a company's ownership and backing with a figure whose previous firm is globally described as a hack-for-hire operation — stealing data from clients on behalf of paying customers — could imply involvement in, facilitation of, or knowing receipt of proceeds from criminal computer fraud and unauthorized access to protected systems. Under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and its Virginia analogue, Va. Code § 18.2-152.4, such conduct is a criminal offense. Stating that XRVision is backed by Khare, in context — that is, in the context of Khare's widely-reported criminal notoriety — implies knowing complicity in, or willful blindness to, that criminal enterprise. That imputation requires no extrinsic proof to be harmful. The sting is self-evident.

*D. The Critical Complication: Truth as a Complete Defense*

Here the analysis must acknowledge a significant complication for Plaintiffs that cuts against the utility of this *per se* claim as a litigation asset: truth is an absolute defense to defamation in Virginia, and the factual predicate of Bloom's statement — that Khare is an investor in or board member of XRVision — is not obviously false. As Bloom has noted, Khare himself claims to be an investor, and other reporting identifies him as a board member. The entire force of the Khare claim rests on Apelbaum's denial — his sworn assertion that XRVision has "never had any dealings" with Khare. If that denial is true, Bloom published a factual falsehood capable of clear proof or disproof, which strengthens the *per se* analysis. But if discovery or trial

reveals any business connection between XRVision and Boundary Holdings or Khare in any capacity — investment, consulting, IP licensing, or otherwise — the claim fails entirely on truth grounds, regardless of *per se* status.

The *per se* question thus resolves cleanly in Plaintiffs' favor at the pleading stage: a false statement associating a cybersecurity professional with the co-founder of a globally-reported hack-for-hire criminal enterprise is injurious on its face, in trade, and could impute criminally indictable conduct. Whether the statement is in fact false — and whether Bloom made it with actual malice — are the contested questions that will determine the outcome at trial.

**Conclusion**

There was no knowledge of falsity. There was no subjective awareness of probable falsity. There was no reckless disregard. There is, to any objective observer, no falsity at all. The First Amendment exists precisely to protect commentary like this — pointed, politically charged, and grounded in disclosed facts — on matters of profound public concern. Plaintiffs cannot meet the actual malice standard by clear and convincing evidence, and judgment must be entered for Bloom. Plaintiffs' case is wholly without merit.

**Defendant's Evidence List**

*Defendant intends to call no witnesses, but intends to submit the following exhibits:*

1. Arizona Republic article concerning Mr. Apelbaum
2. Plaintiffs' discovery answers admitting he was an IDF intelligence officer
3. Plaintiffs' discovery answers admitting he worked for Kochavi and knows he is widely considered an IDF intelligence front
4. Slides for XRVision showing work for Israeli Prime Minister's Office

5. Reuters article on Rajat Khare containing quotes from Aviram Halevi

6. Articles about Khare's Boundary Holdings investment in XRVision

7. Crunchbase profile showing XRVision investment from Khare's Boundary Holdings

8. Boundary Holdings advertisement of XRVision investment on its own website

Respectfully submitted,
April 16, 2026
Jordan Arthur Bloom

3315 N Brandywine St
Arlington, VA 22207
Tel: 571-317-9823
Email: arthuriana89@gmail.com

Pro se certification
I declare under penalty of perjury that:
(1) No attorney has prepared, or assisted in the preparation of this document.

__Jordan Arthur Bloom__________
Name of Pro Se Party (Print or Type)

__/s/ Jordan Arthur Bloom__________
Signature of Pro Se Party
Executed on: April 16, 2026

Certificate of Service
I hereby certify that on April 16, 2026, a copy of this document was sent via email to Plaintiff's local counsel, Timothy B. Hyland, at the email address provided in complaint, thyland@hylandpllc.com.

_/s/ Jordan Arthur Bloom__________
Signature