FILED
04/29/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**UNITED STATES DISTRICT COURT**
**for the**
**EASTERN DISTRICT OF VIRGINIA**
Alexandria Division

| | | |
|---|---|---|
| Yaacov Apelbaum and XRVision, Ltd<br>*Plaintiff* | ) | |
| v. | ) | Civil Action no. 1:25cv147 |
| Jordan Arthur Bloom<br>*Defendant, pro se* | ) | |

**Defendant's Motion to Vacate or Amend Judgment**

Defendant, appearing *pro se*, moves this Court pursuant to Fed. R. Civ. P. 59 and 60 to vacate or amend the judgment. This motion focuses on a fundamental error of law regarding the threshold question of reasonableness and the "substantial truth" doctrine, which the Court erroneously left to the jury, as well as prejudicial misconduct on the part of the Plaintiffs during discovery which contained significant misrepresentations under oath. Excessive damages and lack of proof of malice are also considered.

## I. THE THRESHOLD REASONABLENESS ERROR

The Court committed a reversible error by failing to rule on the threshold legal question: Can the term "spy," as a matter of law, be defamatory when applied to an individual who has admitted to being a career intelligence officer for a foreign military (the IDF)? The Court failed to perform its essential gatekeeping function under Virginia law to determine threshold falsity and defamatory capability. Whether the statement is *capable* of a defamatory meaning is a question of law, not a question of fact for the jury.

In Defendant's summary judgment motion, made to the trial court just after Plaintiff admitted he was a career intelligence officer in the IDF for seven years, which contained Mr. Apelbaum's

admission to that effect, the Court determined it was "not the right time" to rule, then it was never the right time to determine this question, and it was left to the jury.

Defamation law does not require literal truth in every detail; it requires "substantial truth." If the "gist" or the "sting" of the statement is true, the claim must fail. The "gist" or "sting" of "intelligence officer" is identical to "spy" in the mind of the average reader. Since Plaintiff admitted to being a career IDF intelligence officer, the term "spy" is a protected, substantially true characterization or rhetorical hyperbole. It is a non-actionable characterization, which is figurative and loose, but rooted in disclosed facts.

The Court's decision to wait and see about this threshold issue deprived the Defendant of due process. Plaintiff admitted to serving seven years as an IDF intelligence officer. The Court's refusal to rule on the reasonableness of the "spy" characterization—labeling it "not the right time"—allowed a jury to find liability based on a near-synonym. The jury should have been instructed that the terms "intelligence officer" and "spy" are used interchangeably in common parlance.

If a defendant uses a term that is a reasonable (even if sharp) characterization of an admitted fact, there can be no "reckless disregard for the truth," and therefore no malice. By suspending this ruling, the Court invited the jury to penalize the Defendant for a distinction without a legal difference.

## II. LIMITED PURPOSE PUBLIC FIGURE STATUS AND ANTI-SLAPP

Distinct from the reasonableness of the "spy" label is the Plaintiff's status as a limited purpose public figure.

Plaintiff's voluntary and high-profile involvement in the "Hunter Biden laptop" saga—a matter of intense national debate—required the Court to designate him a limited purpose public figure. By inserting himself into the 'Hunter Biden laptop' controversy—a 'public quadrant' of intense debate—Plaintiff assumed the risk of public comment. The Court's failure to designate him as a limited purpose public figure resulted in an unconstitutionally low burden of proof (preponderance vs. clear and convincing).

The authentication, contents, and chain of custody of the electronic materials that became the basis for one of the most significant national news stories of the 2020 election are themselves matters of public interest, not just the materials in the laptop itself.

During the trial, Defendant was not even permitted to argue why he thought Plaintiff's involvement in this major public controversy supported the characterization in the article in contention. Defendant, in other words, wasn't even allowed to explain the full context of the article in contention, and why it supported the characterization that Plaintiff is a spy. The Court improperly bounded a question of journalism about the First Family as a private matter.

Because the Court erroneously bypassed the limited purpose public figure determination, it never applied the Virginia Anti-SLAPP "public concern" test. As a matter of law, reporting on the son of a President and foreign intelligence operatives is a matter of public concern. The Court's failure to hold an Anti-SLAPP hearing on April 23 was a procedural violation that stripped Defendant of his statutory immunity, and denied Defendant due process.

The Court also treated the anti-SLAPP question as subsidiary to the public figure question, when in theory a matter could have some kind of public concern but still involve private figures. Even if Mr. Apelbaum is a private figure, covering what happened around the intrigues regarding Hunter Biden is within the scope of what journalism in the public interest is for. Regardless of

the public figure status of Mr. Apelbaum, the sort of journalism here is what is intended to be protected with things like anti-SLAPP laws.

**III. PREJUDICIAL SURPRISE AND MISCONDUCT (RULE 60(b))**

The verdict was tainted by surprise and misrepresentation by the Plaintiffs:

For months, Plaintiffs claimed the Singaporean and Long Island companies were unrelated, and that Defendant had simply smeared the Plaintiffs by associating them with a company with the same name, one of whose investors is a notorious Indian hacker. Their proposed evidence that showed incorporations in multiple locations is not even evidence they *are* separate companies, because some jurisdictions require foreign qualification, that is to say, formal incorporation in multiple places. What they described in their trial brief is a subsidiary or franchise relationship, while they contended throughout discovery that there was no relationship at all.

This does not render their admissions during discovery a creative characterization, it makes them lies. Plaintiffs contend in their trial brief the company in Singapore which has been renamed Cynapse *no longer* has anything to do with Plaintiff XRVision, but they now admit it *did* have something to do with it at one time. Indeed, the Singaporean company was called XRVision when it was incorporated, and there was a licensing agreement. This was brought to the attention of the Court at the April 23 pre-trial hearing.

Plaintiffs' one-week-before-trial concession that a licensing agreement existed between what they claimed for months are two unrelated companies constitutes a discovery violation that crippled the defense and denied him due process. This is prejudicial misconduct by the Plaintiffs. Through the course of discovery, they insisted the identical names were a mere

coincidence, until they admitted XRVision, the Plaintiff, had licensed the use of that name to the Singaporean company. This is an egregious and intentional misrepresentation.

Plaintiffs contended this association was simply made up for months, through all of discovery, then they ceased to contest it the morning of the trial, after Defendant asked Plaintiffs' counsel the previous day if they were able to prove when they terminated the licensing agreement. They decided to give up the claim rather than answer this question. After all this, Defendant has a right to know why. Needless to say, the foreign business relationships of a video content analytics company whose facial recognition capabilities have been used on January 6, during the Hunter Biden affair, and many other areas of significant public controversy, should be scrutinized by the legal standards of journalism which touches on the public interest, which is to say, the clear and convincing evidence standard ought to apply.

Furthermore Plaintiffs' counsel wrote in their trial brief that he withdrew that license due to misconduct by the Singaporean party. Did Mr. Apelbaum have knowledge Khare was involved and sued Defendant despite this? Did the Plaintiffs disclaim knowledge of a business association which was trumpeted in the Asian press, promoting a company operating under the same name as the Plaintiff through a license they extended? Were they in touch, despite his denial? Defendant should have had the ability during discovery to determine what Plaintiffs XRVision and Apelbaum thought that misconduct was, and when the end of their association occurred. Defendant had no way to do that because Plaintiffs were not honest about the relationship that did in fact exist between these two companies.

By ceasing to contest their business association with a notorious criminal hacker only on the morning of the trial, with objections sustained against discussing it throughout the trial, Plaintiffs executed a manifest injustice that prevented the Defendant from establishing the necessary context for his reporting. Had the licensing agreement been disclosed during

discovery, Defendant's actual malice defense would have been bolstered because he had a factual basis to link the entities.

An association with a notorious criminal hacker, which Plaintiffs ceased to contest, goes to the reasonableness of the "spy" characterization. Even if Plaintiffs dismissed the claim that it's defamatory to say they are associated with a notorious Indian hacker, Defendant should still get to argue that association helps characterize him as a spy because it has been part of the same action.

Furthermore, Plaintiffs routinely argued during trial they had been accused of committing a crime, when that was expressly ruled out in the Court's denial of Defendant's motion to dismiss. What was at issue here is whether the statements are defamatory *per se* because they could prejudice the Plaintiffs in their business. If Plaintiffs intended to argue Defendant accused them of a crime, the jury should have been instructed that wasn't the type of *per se* defamation at issue. Plaintiff got on the stand and said Defendant had accused him of human trafficking, a heinous crime, when the article in question does no such thing and the Court said was not at issue. There is no taking back something like that, it prejudices the jury despite the Court's admonitions that this was not at issue, and he knows it's not true.

There are two statements Plaintiff Apelbaum has made under oath that are a hair's breadth from perjury, his discovery response that he never had any dealings with a company he licensed his trademark to—"XRVision has no investors other than Yaacov Apelbaum. Neither XRVision, nor Mr. Apelbaum, have had any business dealings with 'TNF,' 'Mekong Business Initiative,' or 'Rajat Khare's Boundary Holdings,'" and that the article accuses him of human trafficking, which it doesn't. Plaintiffs dropped the third allegedly offending statement because Defendant asked them to prove that they had withdrawn the license.

During discovery, Mr. Apelbaum was asked about the articles showing Khare was an investor in XRVision, he replied "Assuming Defendant is referring to purported statements that Rajat Khare is or ever was an investor in Plaintiff XRVision, Ltd., now that Defendant has brought these publications to Plaintiffs' attention, Plaintiffs intend to address these inaccuracies." Their trial brief shows this is a prejudicial misrepresentation. Their trial brief claims the XRVision whose incorporation documents were shown to the Court licensed the name XRVision to the Singaporean entity operating under the same name. Construing the distinction being drawn charitably, he is not being clear about the truth here.

The standard of exactitude of language established on one side is that Defendant is liable for not saying "former" IDF intelligence officer, whereas Plaintiff was given free rein to confuse the issue during trial about an article he knows full well has not accused him of committing any crime, can pretend through discovery that two companies with the same name and a licensing agreement had nothing to do with each other, and wax poetical on the stand about the muskets of George Washington.

Had the third allegedly defamatory statement remained in contention, the lack of proof as to the termination of licensing agreement would have been an important piece of supporting evidence for the defense, and it remains so despite Plaintiffs' voluntary dismissal of that part of the claim. Reasonable diligence could not have discovered this during discovery because Plaintiffs lied. A day before the trial Defendant asked about this issue, then Plaintiffs took it off the table a half hour before trial without ever answering the question. This is a surprise which creates grounds for relief from a final judgment under Rule 60(b). It also reveals prejudicial misconduct on the part of the Plaintiffs, a culpable dishonesty that compromised the integrity of the trial, and renders Mr. Apelbaum a non-credible witness for establishing the harm allegedly done.

## IV. EXCESSIVE DAMAGES AND FAILURE OF PROOF

*A. Compensatory damages are excessive*

The $300,000 compensatory award is excessive as a matter of law. Plaintiffs failed to provide any “dollars and cents” evidence of actual loss, medical distress, or lost contracts, therefore there is no proof these damages are in compensation for anything

Neither Plaintiff has shown any evidence of actual injury, therefore all damages are by definition grossly excessive and violate the due process clause. Damages in Virginia must be supported by evidence of actual injury. The award is “grossly excessive” and “shocks the conscience” because it bears no relationship to the evidence presented at trial. If they didn't prove they lost a single client, the award is effectively an unregulated punitive fine.

Furthermore, to be regarded as being linked to Israeli intelligence would serve as an advertisement for a third to half of the country. It’s not immediately clear this characterization causes injury, and therefore Plaintiffs must prove dollars and cents evidence of that to justify compensatory damages. Plaintiffs have only demonstrated the harm by claiming the article accused him of a crime, when it doesn’t.

*B. The second statement does not mention Plaintiff XRVision, and the first merely says XRVision competes and is Singaporean, so all damages to Plaintiff XRVision must be vacated*

Plaintiffs successfully buffaloed the jury with their argument that a guy who clearly hates Jews must be made to pay, but the relationship between the offenses, the offended, and the nature of the harm remains fuzzy. The jury was persuaded antisemitism is so serious an offense that damages must be awarded to a Plaintiff for a statement which does not mention that Plaintiff. Such an extraordinary finding can only be evidence of a biased, incompetent or otherwise

deficient jury, which included one juror from the intelligence community, and another from the Department of Homeland Security, which does business with the Plaintiffs.

The second statement by the Defendant where the jury awarded damages for defaming XRVision is that Mr. Apelbaum is "an Israeli spy who is deeply involved in the Hunter Biden matter." XRVision is not mentioned in this statement, and therefore it fails the "of and concerning" test. The first statement where the jury awarded damages to XRVision says XRVision is Singaporean and that it competes. What could ever be defamatory about that? Mr. Apelbaum has admitted his work on the Hunter Biden matter was uncompensated expert advice, and excess harm could not have been done to XRVision by an additional statement about the other Plaintiff. Even apart from Plaintiffs' lies about the relationship between XRVision and the Singaporean entity with the same name, all damages awarded to XRVision must be vacated.

*C. Punitive damages, even assuming malice was proved, are excessive under Virginia law*

The judgment exceeds the amount demanded by the Plaintiffs, which was not stated in their Complaint but mentioned at trial, though how they arrived at that number was not at all explained. Furthermore the punitive damages exceed the cap ($350,000) under Virginia law.

*D. All damages to Plaintiff Apelbaum are unjustified by Defendant's willingness to amend the article and share Plaintiff's part of the story*

If Plaintiff Apelbaum wanted to mitigate any harm to his reputation posed by the allegedly defamatory article, he had the opportunity to accept a factually uncontested adjustment to language and say whatever he wanted on the very same page. To be given that opportunity before a legal proceeding, and then argue harm has been done that justifies compensatory damages is dubious. It certainly does not justify punishing the person who offered to mitigate

any harm prior to the proceeding. He could have taken a simple step to mitigate any harm which did exist, at any time: engaging in a reasonable discussion with the Defendant, which he refused to do, while discovery tended to confirm Defendant's view of the characterizations he represented originally. Therefore all damages to Plaintiff Apelbaum should be vacated.

## V. DEFENDANT WAS PREVENTED FROM ESTABLISHING LACK OF MALICE, AND NO FINDING OF MALICE IS SUPPORTED BY THE EVIDENCE

If a statement is reasonable it cannot be malicious. Defendant put the full scope of his argument in his trial brief, with five different elements establishing why such a characterization was fair, true and reasonable. Those consisted of 1) the discrepancies in the Hunter Biden files which established different versions of them in circulation as well as his intervention which objectively aided the goals of the Israeli government, 2) previous assertions that Plaintiffs' business partners and close friends were tied to foreign intelligence agencies, 3) the assignation of patents to him alongside a front for Israeli intelligence, 4) the seeking of irrelevant discovery into an FBI confidential human source informing on Jeffrey Epstein, and 5) his own admission that he was an IDF intelligence officer for seven years. This is more than sufficient for a reasonable basis for the characterization alleged to be defamatory, yet Defendant was not permitted to argue it in full at trial, nor was he permitted to ask the Plaintiff about much of this on the stand. Therefore he was unable to establish the reasonableness of his characterization. If Defendant was unable to make this case, the Court should have informed him after the trial brief was submitted. Defendant was prevented from establishing a lack of malice at trial because he wasn't permitted to argue the full context and reasonableness of the characterization.

Defendant was surprised by the relevance of malice because the idea that malice could ever appertain to the use of a near-synonym seems absurd. He reasonably believed the "spy" characterization was a threshold truth, he was repeatedly prevented from explaining the five

elements in his trial brief that supported his reasonable characterization, and given that a hearing was not granted on the anti-SLAPP question because limited public figure status was not determined, no reason to think malice would be relevant. Because the context which was also excluded could have established a lack of malice, the jury's punitive assessment was based on an incomplete and skewed version of the facts.

The Plaintiffs' theory of the case is that Defendant called a career IDF intelligence officer an Israeli spy because he hates Jews. Plaintiffs brought out statements during trial from Defendant's coverage of Israeli spyware deployment throughout the world, which have been the basis of criminal prosecution in dozens of countries, but which have nothing to do with Mr. Apelbaum. Defendant admits he thinks this is bad. Defendant denies he hates Jews, but setting aside how far one might go to search a person's heart, malice has to be proved in the actual act. The theory is that Jew-hating malice appertains to the exaggeration between calling someone an Israeli spy and someone who was a career intelligence officer in the IDF, or failing to add the word "former." This is insufficient as a matter of law, and malice could never appertain to such a characterization in light of the facts, therefore the punitive damages should be entirely vacated. As a matter of principle no journalist would retract an article without an explanation as to why it was false, which Plaintiffs declined to give after Defendant's response to their cease-and-desist, and still declined to give when they tried to shake down a journalist for a hundred thousand dollars to make this suit go away. Defendant's stubbornness with respect to a retraction is a matter of professional pride, not malice.

The strength of the taboos around antisemitism, extending to legitimate coverage of Israeli influence, is the reason why Plaintiff was so certain he could shake down the Defendant without discussing the offered correction or appending of a statement of their own. Clearly, if Defendant had not stood his ground, we would not now know that Plaintiff *was indeed* an IDF intelligence officer for seven years, and that the relationship between a notorious Indian hacker and

XRVision was not fabricated—it existed in the form of a licensing agreement which Plaintiffs now concede exists. With those admissions, why would a retraction be justified now? Defendant stood his ground reasonably and with an open hand, and was vindicated.

There is affirmative evidence in the record of a lack of malice. Defendant replied to Plaintiffs prior to suit and asked what adjustments they would like him to make short of a retraction, and offered to append a statement of their choosing to the allegedly offending article. Plaintiffs did not reply and filed suit instead. Plaintiffs refused to discuss a correction, and during settlement discussions continued to demand payment and a retraction, while Defendant continued to be willing to append a statement of their choosing to the article and adjust language to the wholly unobjected-to "Israeli in the spyware business who by his own admission has done business with intelligence agencies." This is very far from targeted harassment, it's trying to meet the Plaintiffs at least halfway, though being unwilling to simply let Mr. Apelbaum's version of events stand alone. This shows a state of mind which is disinclined to represent them unfairly.

**CONCLUSION**

The Court's failure to decide the threshold question of reasonableness—whether calling an admitted intelligence officer a "spy" is even capable of a defamatory meaning—resulted in a verdict that is an absurdity, and a manifest injustice that cannot stand. The circumstances are exceptional. A journalist, covering intrigues around the son of a president, has been held liable for calling an admitted career IDF intelligence officer an Israeli spy, and his writing about this matter of clear public interest has been treated as a private concern. The Court has abdicated every test or threshold issue that pertains to this case and left it all to the jury, to the grave detriment of constitutional rights. The surprise withdrawal of the Indian hacker claim from contention after lying under oath about the corporate relationship between Plaintiffs and the Singaporean company during discovery create grounds for vacating the final judgment under

Rule 60(b). Defendant respectfully requests the Court vacate the judgment and enter judgment as a matter of law for the Defendant. In the alternative, major issues with the damages stated and the failure to prove malice provide grounds to alter or amend the jury award under Rule 59.

Respectfully Submitted,

April 29, 2026
Jordan Arthur Bloom

3315 N Brandywine St
Arlington, VA 22207
arthuriana89@gmail.com
571-317-9823

*Pro se* certification
I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of this document.

___Jordan Arthur Bloom__________
Name of *Pro Se* Party (Print or Type)

__/s/ Jordan Arthur Bloom__________
Signature of *Pro Se* Party

Executed on: _April 29, 2026________________

Certificate of Service
I hereby certify that on April 29, 2026, a copy of this document was sent via email to Plaintiff's local counsel, Timothy B. Hyland, and *pro hac vice* counsel, Jonathon Burns at the email addresses provided in complaint, thyland@hylandpllc.com and john@burns-law-firm.com.

__/s/ Jordan Arthur Bloom_____